416 So.2d 539 (1982)
STATE of Louisiana
v.
Jessie GREEN.
No. 81-KA-2661.
Supreme Court of Louisiana.
June 21, 1982.
*540 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., William Weatherford and Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Frank Saia, M. Michele Fournet, David Randall Buckley, Baton Rouge, for defendant-appellant.
H. CHARLES GAUDIN, Justice Pro Tempore.[*]
Jessie Green was convicted of first degree murder[1] of his common law wife, Katie Riley, and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.
He had tried unsuccessfully to convince a 12-person jury that there had been sufficient provocation to justify a verdict of manslaughter.[2]
Green bases this appeal on several remarks made by the prosecutor during rebuttal argument.
The facts are these:
Green and Ms. Riley lived together in Baton Rouge for approximately 11 years. On May 25, 1979, Ms. Riley and three of her children, along with her brother and his girlfriend and another man named J. C. Moore, left in Moore's automobile on a three-day trip to Ronleville, Mississippi, to visit Ms. Riley's ill sister.
Moore was paid for the use of his car and he assisted with the driving.
The group returned to Baton Rouge on May 28th, and dropped Moore off at a community center before proceeding to the apartment where Green and Ms. Riley lived. Green was waiting in the doorway, holding a pistol.
Kayree Riley, the victim's 14-year-old daughter, described the confrontation:
"He told my momma, he said, `I heard about you and your nigger,' like that. And my momma said, `who told you them damn lies?' And so he said, `who told you your damn lies?' So he started shooting my momma."
The first shot struck Ms. Riley in the abdomen and she fell. She rose and stumbled from the apartment but she was shot several more times, in her back and in a leg. She continued to the balcony where she was shot for the final time.
A total of thirteen witnesses testified during the trial, including the defendant.
The prosecutor spoke first during closing arguments pointing out to the jury the nature of the evidence tending to show first degree murder. He also downplayed Green's manslaughter contention, saying that there had been no proof of any misconduct or provocation on Mrs. Riley's part.
Green's attorney, Frank Saia, argued that Ms. Riley, upon reaching the apartment, had told Green that she was having an affair with another man and that Green "blew up." A heated argument ensued, Green had said, and then he shot Ms. Riley.
*541 Referring to the fact that the State's witnesses had given very similar versions of the shooting incident, Green's attorney said:
"... Kitty, Kay, Marie, Dorothy Holiday, Johnny, their stories are remarkably consistent right down the line like little ducks, you know, in a row."
He then pointed out that there had been a two-year delay before Green's case came to trial, and only after the matter had been submitted to two grand juries. "We know," defense counsel said, "that this is not the normal course when you've got a gut cinch first degree murder case with a cold-blooded murderer to run and take it to two grand juries, but I've got evidence of that, why this case is not your normal average cold-blooded first degree murder case because they waited two years to prosecute. They run these people in and out of her fast when they've got good cases ..."
In rebuttal, the prosecuting attorney said this:
"Mr. Saia says that all the State's witnesses are lying because they all say the same thing. I tell you what I will challenge him to do. I've got a tape I made of every one of these witnesses the afternoon of that crime on May 28th. If he wants to join with me and let's play that tapelet's see how it compares with what they testified to in court ..."
Defense counsel objected and, out of the jury's presence, requested a mistrial because the prosecutor was "... intentionally arguing evidence that is not before this jury."
In response, the prosecutor stated that he had "... the right to rebut whatever he (Saia) said in his closing argument."
The trial judge denied the motion for a mistrial, and after the jury returned to the courtroom they were told by the judge:
"Ladies and gentlemen of the jury, prior to continuing in this matter you will hear me repeat later but you should keep in mind preliminary instructions I gave you prior to trial that the remarks that these attorneys make are not evidence. They are merely intended to help you in understanding their contentions."
Later in the rebuttal argument, the prosecuting attorney tried to explain why it had taken two years to bring the defendant to trial.
The prosecutor said:
"He (Saia) then said that the State does not think much of this case because it took them two years to prosecute it. That's the biggest laugh in the world. This man has had three different lawyers. The record reflects it has been set for trial on about four times, three times his own lawyer didn't show up for court. We couldn't find him. We had the sheriff out for him one time. We had a warrant for him. Finally he was convicted of some crime over in New Roads somewhere, stealing money or something. I don't know what it was. And finally Mr. Saia and them were appointed to represent him."
Objection was made and Mr. Saia again asked for a mistrial. Following argument outside the jury's presence, the trial judge denied the mistrial request and, when the jury was again seated, said:
"Ladies and gentlemen of the jury, you are once more reminded that the remarks of these attorneys are not evidence, and when you consider your verdict you shall consider only the evidence."
While this Court has never condoned improper closing arguments, we recognize the fact that there was serious first degree murder evidence against Green and we are not convinced that the prosecutor's comments contributed to the verdict. See State v. Dupre, 408 So.2d 1229 (La.1982), State v. Monroe, 397 So.2d 1258 (La.1981) and State v. Hicks, 395 So.2d 790 (La.1981).
We also acknowledge the common sense and fairmindedness of jurors and their ability to distinguish meaningful evidence from unwarranted comments.
Nonetheless, as this Court has repeatedly stated, prosecutorial misconduct that affects *542 verdicts will not be tolerated and will result in reversals of convictions.[3]
Each case concerning alleged impropriety during closing arguments is different from all others and must be individually evaluated. What we are saying in the instant case is that the prosecuting attorney's remarks, considering the trial in its entirety and the comments themselves, were not of such inflamatory nature as to have a prejudicial impact on the jury. Otherwise stated, the verdict would have been the same had not the prosecutor made the remarks complained of.
Although the trial judge's admonitions following both of the objected-to comments were not as strong as defense counsel contend they should have been, they did inform the jury that the remarks were not evidence.
The trial judge was of the opinion that Green received a fair trial, and so are we. Therefore, the defendants conviction and sentence are affirmed.
NOTES
[*] Judge H. Charles Gaudin of the Court of Appeal, Fifth Circuit, and Judges Israel M. Augustine, Jr. and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Ad Hoc joined by Justices Calogero, Dennis, Watson and Lemmon.
[1] LSA-R.S. 14:30
[2] LSA-R.S. 14:31
[3] See State v. Wilson, 404 So.2d 968 (La.1981).