457 So.2d 604 (1984)
STATE of Louisiana
v.
Lester DUPLESSIS.
No. 82-KA-2053.
Supreme Court of Louisiana.
October 15, 1984.
*605 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Thomas Chester, E. Sue Bernie, Asst. Dist. Attys., for plaintiff-appellee.
John W. Reed, Glass & Reed, New Orleans, for defendant-appellant.
LEMMON, Justice.
This is an appeal from a conviction of two counts of armed robbery and concurrent sentences of 98 and 99 years imprisonment at hard labor. We reverse the conviction and order a new trial because the combined effect of the prosecutor's obstructionist tactics and the trial judge's grudging attitude on voir dire and during closing argument created the appearance that the trial judge had abandoned his role as neutral arbiter. When the conduct of the prosecutor and trial judge creates such an impression and thereby undermines the required complete neutrality on the part of the trial judge which is an essential element of a fair trial, a new trial is the only means of affording the defendant a fair opportunity to have the jury decide his guilt or innocence.

I.
This case involves the July, 1979 armed robbery of a clothing store by two men who pretended to be customers. The men used pistols to rob the owner, the manager, three other employees and one customer.
Within hours of the robbery, five of the victims identified one of the perpetrators in a photographic display. However, this robber (Wilbert Kelly) was killed in September in the course of an unrelated crime before he could be arrested for this offense.
In October, 1979, confidential information led to the investigation of defendant as the other perpetrator. Three of the victims provided the identification which resulted in defendant's arrest and prosecution. At trial, the prosecutor's case rested solely on the identification by three of the six victims. Defendant exercised his right not to testify, and the defense strategy was to attack weaknesses in the identification evidence and to rest on the presumption of innocence. Through cross-examination of prosecution witnesses, defense counsel developed and emphasized discrepancies between the perpetrator's height estimated by the victims and defendant's actual height[1], some confusion over hair style, the inability of the other victims to identify defendant, and alleged suggestiveness in the pretrial identification procedures. The jury found defendant guilty on two counts by 10 to 2 and 11 to 1 verdicts.
On appeal, defense counsel presents a two-pronged attack on the fairness of the proceedings and the resulting effect on the jury's resolution of the identification evidence. The attack involves (1) the restriction of voir dire examination and (2) the conduct of the prosecutor and the rulings of the court during closing argument.

II.
During voir dire, defense counsel sought to elicit responses from prospective jurors on their experiences with mistaken *606 identification, on their attitudes concerning defendant's inability to provide an alibi, on defendant's exercise of his right not to testify, and on the concept of reasonable doubt.[2] The prosecutor continuously complained about defense counsel's attempts to explore the experiences, expectations and attitudes of the jurors. On many occasions, the trial judge maintained the objections and restricted counsel to stating the law and asking whether the jurors could follow that law.[3]
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. Art. I, § 17 (1974). The accused's right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of non-repetitious voir dire questions which reasonably explore the juror's potential prejudices, predispositions or misunderstandings relevant to the central issues of the particular case. State v. Monroe, 329 So.2d 193 (La.1976). On the other hand, a trial judge in a criminal case has the discretion to limit voir dire examination, as long as the limitation is not so restrictive as to deprive defense counsel of a reasonable opportunity to probe to determine a basis for challenges for cause and for the intelligent exercise of peremptory challenges. State v. Williams, 457 So.2d 610 (La.1984) decided this day. Therefore, when the defendant asserts that he has been deprived of his constitutional right to a full and complete voir dire examination, the reviewing court must examine the entire voir dire in order to determine that issue.
Although a review of the entire record of voir dire examination in this case presents a very close question, we decline to reverse the conviction solely because the limitations were so restrictive as to deprive the defendant of a reasonable opportunity to probe for challenges of cause and to exercise intelligently his peremptory challenges. In general, defense counsel through persistence was eventually permitted to inquire into the areas in which he had a right to seek information (except possibly the questioning as to the juror's attitude toward an accused's inability to provide an alibi, which was an area of inquiry almost completely excluded by the judge). Nevertheless, the prosecutor constantly interrupted counsel's questioning by objecting to clearly proper questions, and the trial judge displayed a grudging attitude toward the asking of those proper questions, resulting in the appearance before the jury that defense counsel was wasting time on frivolous technical defenses.[4] The tenor of the exchanges colored *607 the entire proceedings and undermined the judicial atmosphere necessary to insure the proper conduct of the trial.[5]

III.
The closing argument by the prosecutor drew four objections. The first one *608 (the least prejudicial impropriety) occurred when the prosecutor told the jury that most convictions were based on only one identification witness, an argument clearly outside the record in this case. When defense counsel objected and requested an admonition, the trial judge neither sustained the clearly correct objection nor gave the clearly called-for admonition, but only stated that he could not comment on the evidence.[6]
Immediately thereafter, the prosecutor commented that a bus full of witnesses would not be enough for defense counsel because he was a "very skillful lawyer". When defense counsel properly objected to the personal argument about defense counsel (clearly exceeding the statutory limitation confining argument to the evidence or lack of evidence or reasonable inferences drawn therefrom) and asked for an admonition to the prosecutor to discontinue such tactics, the judge again neither sustained the objection nor gave the admonition, but again made the totally irrelevant statement that he could not comment on the evidence.[7] To compound the error, the trial judge requested that defense counsel not interrupt the argument again.[8]
The most egregious instance of improper prosecutorial argument occurred during rebuttal *609 argument when the prosecutor told the jurors that defense counsel had them removed at one point in the trial because he did not want them to hear the witness' answer. Although such an argument was clearly improper, the trial judge again declined to sustain the objection and merely told the jury that he could not comment on the facts.[9]
The prosecutor's first comment on evidence outside the record might be excused as innocuous, but the prosecutor's comment on evidence which was excluded from the record is flagrant and inexcusable. Such deliberate misconduct makes a mockery of the rules of evidence and defeats the purpose for excluding unreliable evidence in the first place. Such comments may also lead the jury to believe that defense counsel was using technical objections to conceal his client's guilt.
Finally, the prosecutor concluded his argument with a blatant appeal to prejudice by predicting the dire consequences in case of acquittal.[10] The trial judge, instead of *610 sustaining the objection and admonishing the jury to disregard such comments, told the jury that the function of closing arguments was to aid them in reaching a verdict. Even more damagingly, he chastised defense counsel in front of the jury for interrupting closing argument.
When such blatantly defiant tactics by the prosecutor are permitted, the result is the frustration of a criminal justice system which is designed to insure that a person is sent to prison only after being convicted on the basis of a jury's fair (and not prejudicially influenced) evaluation of reliable evidence.[11] In the present case, such tactics were not only permitted, but were actually approved when the trial judge twice reprimanded the defense attorney for making proper and meritorious objections.
This court seldom reverses convictions on the basis of prosecutorial argument (because jurors are generally told repeatedly that they must decide the case on the evidence and that arguments of counsel do not constitute evidence). In the present case, however, the effect on the jury's evaluation of evidence caused by the errors during closing argument, when cumulated with the effect of the errors during voir dire, simply cannot be said to be harmless. Under any concept of fundamental fairness, the judicial system cannot allow to stand a guilty verdict reached by a jury exposed to such prejudice as to preclude a fair determination of guilt or innocence based on the acceptance or rejection of the identification evidence.
Accordingly, the conviction and sentence are reversed, and the case is remanded to the trial court for a new trial.
CALOGERO, J., will assign additional concurring reasons.
BLANCHE, J., dissents and assigns reasons.
WATSON and MARCUS, JJ., dissent.
BLANCHE, Justice (dissenting).
The majority relies on the combined effect of the prosecutor's obstructionist tactics and the trial judge's grudging attitude on voir dire and during closing argument to find that the trial judge had created the appearance (that he had) abandoned his role as a neutral arbiter. I am unable to join in reversing the conviction on these grounds, being of the opinion that the record does not support such a finding and that the defendant did receive a fair trial, albeit the prosecutor's conduct was unprofessional and discourteous.
The case was solely one of identification, the evidence of which I find to be of such force that notwithstanding the complained of conduct of either the judge or prosecutor that the jury verdict (10-2) could not have been influenced thereby.
I respectfully dissent.
NOTES
[1] All six victims described the first robber (Kelly) accurately as to height and weight, the composite description being within one inch and three pounds of his actual measurements. The victims unanimously described the second robber as taller, by two or three inches. Defendant is actually two inches shorter than Kelly.
[2] The crime occurred over three months before defendant's arrest. Therefore, the questioning as to a juror's attitude toward an accused's inability to provide an alibi was critical to the defense theory of the case.
[3] Although the ultimate decision on challenges for cause generally turns on whether the prospective juror can follow the law given by the court, defense counsel must be permitted to question jurors about their attitudes toward such laws as reasonable doubt so that counsel may exercise his peremptory challenges intelligently. When a trial judge limits defense counsel to a statement of the law and a closed-end question on the juror's ability to follow the law, he flirts with reversible error on constitutional grounds.
[4] The conservation of court time, of course, does not alone justify undue restriction of voir dire examination. See State v. Jackson, 358 So.2d 1263 (La.1978) and State v. Dixon, 365 So.2d 1310 (La.1978). The entire voir dire examination for this trial of a serious offense encompassed 36 prospective jurors and 130 pages of transcript, but a considerable percentage was taken up by prosecutorial objections. (For example, 15 pages of transcript were required before a former police detective was excluded for cause. Additionally, the defense voir dire of the first 12 prospective jurors, covering 30 pages of the transcript, provoked 25 objections by the state and four by the court and consumed approximately half of the 30 pages.)

More significant than the numbers, of course, is the fact that many of the objections were no more than unfounded attempts to halt from the outset any inquiry into extremely relevant matters. For example, the prosecutor objected to defense counsel's first question whether any of the jurors had ever experienced a case of mistaken identity, which was the sole defense in this case. Later, the prosecutor objected to a question about the jurors' attitude toward an accused's inability to provide an alibi, on the basis that the defense in this case was mistaken identity and not alibi. Then when defense counsel turned to questions about the jurors' attitude on an accused's exercise of his right to testify, the following occurred:
"BY [DEFENSE COUNSEL]:
"Can you understand then why the law simply says the defendant doesn't have to say anything, `We'll leave it up to the State.' Now, getting back to Mr. Breashears, how would you feel in a case such as this if the defendant did not testify?
"BY THE COURT:
"There's only [one] way they can feel about it. They can't hold it against him.
"BY [DEFENSE COUNSEL]:
"Your Honor,
"BY THE COURT:
"Will you follow that law if I tell you that's the law?
"BY THE PROSPECTIVE JUROR:
"Yes, I will.
"BY THE COURT:
"There you are.
"BY [DEFENSE COUNSEL]:
"Your Honor, in the case of State v. Hayes, 364 So.2d 923 [1978], the Supreme Court specifically held that the defendant should be allowed to inquire of jurors, not simply what the law is, but to inquire of them how would they feel about following that aspect of the law. Now,
"BY THE COURT:
"If they say they're not going to follow it, [then] they disqualify.
"BY [DEFENSE COUNSEL]:
"Your Honor,
"BY THE COURT:
"If they say they're going to follow it, well,
"BY [THE PROSECUTOR]:
"Your Honor, I think the proper question in that particular decision is whether or not the jurors could in fact apply the law, and not how they feel about the law. The juror [may] not feel proper about a particular law, but the question here and before this entire panel today is whether or not they have the ability to apply the law.
"BY [DEFENSE COUNSEL]:
"If Your Honor please, at 364 So.2d 924, the question by Mr. Usprich, `However, do any of you feel that you would want to hear his side of the story?' There was an objection, the Supreme Court reversed the Court,
"BY THE COURT:
"You can ask that question. But, you didn't ask that question.
"BY [DEFENSE COUNSEL]:
"And, then the language continues, `Such attitudes'
"BY THE COURT:
"I don't care what the language says. That's what the whole case said. That question. Ask that question only.
"BY [DEFENSE COUNSEL]:
"Your Honor, if I may
"BY [THE PROSECUTOR]:
"Your Honor, I'm going to object to Mr. Reed reading long excerpts from law books.
"BY [DEFENSE COUNSEL]:
"Then, if Your Honor,
"BY THE COURT:
"I have already ruled, Mr. Reed. You may ask that question.
"BY [DEFENSE COUNSEL]:
"Do I understand the Court
"BY THE COURT:
"You understand me rightly. Ask the question as it is in that case.
"BY [DEFENSE COUNSEL]:
"Do I understand the Court to be ruling that's the only question I can ask
"BY THE COURT:
"With respect to that question, sir, yes."
[5] The situation was aggravated by the judge's personal attacks on counsel. The following is an example of intemperate comments which could undermine the effectiveness of counsel and of the defense which counsel was attempting to present on behalf of his client:

"BY [DEFENSE COUNSEL]:
"If at the end of this case, Mrs. Anderson, theyou have a reasonable doubt, in other words, you heard the identification testimony, and you've heard the State's evidence, and you've heard two people say that Mr. Duplessis committed the crime, but if things don't stick together, and you have a reasonable doubt, will you return a verdict of not guilty?
"A. Certainly.
"Q. And, will you do that even though the whole thing (inaudible) unsettled in your mind, you don't know for sure who did it, or didn't
"BY [THE PROSECUTOR]:
"I'm going to object to this, Your Honor.
"BY [DEFENSE COUNSEL]:
"but if you have a reasonable doubt
"BY [THE PROSECUTOR]:
"I'm going to object, Your Honor.
"BY THE COURT:
"Just a moment, Mr. Reed. Start that question over again, sir.
"BY [DEFENSE COUNSEL]:
"The question, Your Honor, is if she has some uncertainty
"BY THE COURT:
"I can't hear you, sir.
"BY [DEFENSE COUNSEL]:
"The question is if she has some uncertainty about the case, if she has a reasonable doubt, will she find the defendant not guilty.
"BY THE COURT:
"That's not entirely correct.
"BY [THE PROSECUTOR]:
"That question is not objectionable to the State, Your Honor. I believe that's a proper question.
"BY [DEFENSE COUNSEL]:
"That's the question I wanted to ask her.
"BY [THE PROSECUTOR]:
"I believe that's proper.
"BY [DEFENSE COUNSEL]:
"Q. Would you then find the defendant not guilty?
"A. (Inaudible).
"Q. In other words, what I mean, what I'm trying to say, perhaps not very well, is
"BY THE COURT:
"You can say that again.
"BY [DEFENSE COUNSEL]:
"Well, Your Honor
"BY THE COURT:
"You've got me confused on it.
"BY [DEFENSE COUNSEL]:
"I'm doing my best, Judge.
"BY THE COURT:
"All right. Start over again. You might make it this time."
[6] The argument, objection and ruling were as follows:

"BY [THE PROSECUTOR]:
"Now, it's rare that you have this many identifications in an armed robbery. It's a rare thing. It's usually one on one.
"BY [DEFENSE COUNSEL]:
"Objection, Your Honor. This goes beyond the record whether this is rare or not rare. And, I would ask the Court to admonish the Jury that. That's not evidence on the facts in this case.
"BY THE COURT:
"I can only repeat, I cannot comment on the evidence. You rely on your memory of what you heard from this witness stand.
"Proceed.
"BY [THE PROSECUTOR]:
"Thank you, Your Honor."
[7] The argument, objection and ruling were as follows:

"[THE PROSECUTOR]:
"As I was saying, even if I had in fact brought in a bus load of NOPSI people who were riding in a bus and passed an armed robbery and saw it transpire on that date. And, let's say that the Most Rev. Archbishop Hannan was on the bus, that wouldn't be enough for Mr. Reed. Because Mr. Reed is a very skillful lawyer.
"BY [DEFENSE COUNSEL]:
"Objection, Your Honor, to personalize in this matter in terms of the relative skills of lawyers. I don't think it has any place in the proceedings. I ask Your Honor to admonish the district attorney not to make those references.
"BY THE COURT:
"I can only say, Ladies and Gentlemen, what I've said before. I cannot comment on the evidence. It is up to you to
"BY [DEFENSE COUNSEL]:
"Note my objection.
"BY THE COURT:
"rely on your memory on what you heard."
"BY [DEFENSE COUNSEL]:
"I note my objection, Your Honor, because
"BY THE COURT:
"Very well, sir.
"BY [DEFENSE COUNSEL]:
"this is a question of what's heard.
"BY THE COURT:
"Now, let's don't interrupt again it at all possible, please.
"BY [THE PROSECUTOR]:
"Thank you, Your Honor."
[8] During the defense closing argument, the prosecutor interrupted not twice, but five times, but did not draw an instruction not to interrupt.
[9] The argument, objection and ruling were as follows:

"BY [THE PROSECUTOR]:
"I said, `Detective, is there anybody present in the courtroom who is a known associate of Wilbert Kelly?' And, Mr. Reed objected. And, the Jury was taken out. He didn't want you to hear that answer. And, you know why he didn't want you to hear that answer. And, you know why he didn't talk about it in his argument. And, that's because when Detective Steinkamp answered, `Yes, there is someone in the courtroom who's a known associate of Wilbert Kelly.' And, I said, `Officer, who's that?' `This man, the defendant before the bar.' Now why didn't Mr. Reed want you to know that this is a known associate of Mr. Kelly? Why?
"BY [DEFENSE COUNSEL]:
"Your Honor, I would object to this argument. The district attorney well knows that there were legal grounds for the objections made, and it's inappropriate to argue on the basis of objections made as the district attorney has advised. Objections are probably made for sound reasons concerning the admissibility and competency of evidence. "BY THE COURT:
"Ladies and Gentlemen of the Jury, I can only tell you what I've told you before. You are the trier of facts, and not I. I cannot comment on the facts at all. If you didn't hear it from the witness stand, pay no attention to it.
"Proceed.
BY [THE PROSECUTOR]:
"Thank you, Your Honor. And, that's just my point. Why? Why doesn't he want you to know that? Because it puts the hat on his client. That's Wilbert Kelly's partner. That's his friend." (Emphasis supplied.)
[10] The argument, objection and ruling were as follows:

"BY [THE PROSECUTOR]:
"When the day comes, Ladies and Gentlemen, when what Mr. Reed is trying to tell you, comes about, that is, when the day comes, people like us, people like those people right there, hard working people, when the day comes, when they can't believe what they've seen with their own God given eyes, that's the day, fire me, close down this court
"BY [DEFENSE COUNSEL]:
"Your Honor, I object
"BY [THE PROSECUTOR]:
"and you lay off
BY [DEFENSE COUNSEL]:
"every (inaudible)
BY [THE PROSECUTOR]:
"(Inaudible due to much shouting)armed robbery.
"BY [DEFENSE COUNSEL]:
"I make an objection. That is an appeal to the community
"BY THE COURT:
"Just a moment.
BY [DEFENSE COUNSEL]:
"prejudice
"BY THE COURT:
"Just a moment, sir.
BY [DEFENSE COUNSEL]:
"When I make an objection, the State
BY THE COURT:
"I know, but you're not supposed to make an objection when a man's making a closing argument.
"BY [THE PROSECUTOR]:
"I object to frivilous [sic] objections by the Defense.
"BY THE COURT:
"Nobody is.
BY [DEFENSE COUNSEL]:
"Your Honor, I may object when counsel makes an appeal to prejudice the safety of the community in a trial of an individual on the facts of this case. I make that objection, and I urge that the Court admonish the Jury to disregard that argument.
"BY [THE PROSECUTOR]:
"I argue to the Court to admonish Mr. Reed to keep his mouth shut.
"BY THE COURT:
"All right now, look,Ladies and Gentlemen of the Jury, as I told you originally, both sides have the right to make fair comment on the evidence as they appreciate it. The Court cannot comment on the evidence. What they have to say to you does not constitute evidence. It's an aid in helping you arrive at a verdict.
"Proceed.
BY [DEFENSE COUNSEL]:
"Note my objection, Your Honor.
"BY [THE PROSECUTOR]:
"Thank you.
BY THE COURT:
"Note the Court's ruling, too. Proceed, sir."
[11] While the prosecutor's function is to obtain convictions, he has a duty to refrain from argument which injects issues broader than the defendant's guilt or innocence under the law or which predicts consequences of an acquittal, thereby diverting the jury from its duty of deciding the case on the evidence. See ABA Standards for Criminal Justice, The Prosecution Function, Ch. 3, § 5.8(d) (2d ed. 1979); State v. Kaufman, 304 So.2d 300 (La.1974).