ARMSTRONG, Judge.
The defendants, Adrianne Brumfield and Michael Favorite, were charged with and convicted of a violation of LSA-R.S. 14:31, relative to the offense of manslaughter. Brumfield was sentenced to serve twenty-one years at hard labor and Favorite was sentenced, as a second offender, to serve forty-two years at hard labor. We reverse.
The record reflects that on February 12, 1984, at approximately 12:00 noon, the victim, Warren Taylor, and his two friends, Lorie Rockett and Susan Barrett, left the Flamingo cafe and proceeded to cross St. Charles Avenue near the middle of the block. While in the cafe the victim had a couple of drinks and left the establishment with a cup of ice.
Immediately prior to crossing the street, Barrett and Rockett noticed a truck approximately one-half block away on St. Charles Avenue proceeding in their di *208 rection. Because it appeared to them that there was sufficient time to cross the street before the truck reached them, they did. As the truck drew closer, the driver began honking the horn so Rockett and Barrett quickened their pace. Taylor, however, made no effort to get out of the truck’s way, and when the truck finally reached Taylor, he cursed the driver and threw the cup of ice at the truck.
While Taylor, Rockett and Barrett continued walking to the Burger King parking lot where Barrett’s car was parked, the truck, driven by Favorite and containing Brumfield and their son, made a U-turn on St. Charles Avenue and headed towards the Burger King lot. Once in the lot, Favorite exited his truck and approached Taylor. Favorite and Taylor exchanged words but no physical contact was made. Following a brief argument, Taylor got into Barrett’s car as a passenger, and Barrett began backing out of the parking lot. Favorite walked to his truck, got a container of coffee, returned to Barrett’s car and threw the coffee on the car. Taylor then jumped out of his car and approached Favorite, who in turn backed away from the oncoming Taylor.
Taylor immediately kicked Favorite, knocking the defendant to the ground. Taylor continued kicking Favorite, cutting his eye and preventing him from getting off the ground. Brumfield exited the truck carrying, with both hands, an object which looked like a pipe and began hitting the victim on the back of the head. At this point the fight began to move down St. Charles Avenue and out of view of the Burger King employees and patrons who had been observing the fight. Favorite then stabbed and killed the victim with a knife which was never recovered.
Both defendants testified in their own behalf. Brumfield was not certain where the knife had come from, but Favorite testified that the victim had pulled the knife on him. The defendants admitted that Favorite had stabbed Taylor to death but asserted that their actions had been in self-defense or in the defense of others.
None of the State’s witnesses or the other defense witnesses knew who first had the knife. One of the State’s witnesses, however, testified that she thought Brum-field had handed Favorite something during the course of the struggle. All of the witnesses observing the fight testified that the victim was larger than the defendant and that prior to Brumfield’s involvement the victim was winning the fight. In this latter regard, defense witnesses, both lay and expert, testified that the kicks utilized by the victim resembled those used by individuals trained in the martial arts. The State’s witnesses contradicted the defense on this point.
The victim and all of the State’s witnesses were white, and the defendants and all of their witnesses were black. The jury was composed of both black and white jurors, and the final verdict was 10-2.
On appeal the defense asserts seventeen assignments of error. Because we find reversible error in assignment of error number three, we need not address the remaining assignments of error. We do, however, feel compelled to express our concern over the tenor of the Trial Court’s exchanges with defense counsel and witnesses.[1] Considering the trial as a whole, it is clear that the Trial Court came danger *209 ously close to abandoning its role as neutral arbiter.[2]
In their third assignment of error defendants argue that the Trial Court erred in denying them their right to full and complete voir dire as guaranteed by Art. I Section 17 of the Louisiana Constitution, Throughout voir dire by the defense, the Trial Court repeatedly told defense coun-seis that their voir dire was taking too long and that they had to speed up their questioning of prospective jurors.[3] More importantly, the Trial Court refused to allow the defense to question jurors as to whether they could apply the law of self-defense fairly even though the victim was white and the defendants black.[4]
*210 “The accused’s right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of non-repetitious voir dire questions which reasonably explore the juror’s potential prejudices, predispositions or misunderstandings relevant to the central issues of the particular case.” State v. Duplessis, 457 So.2d 604, 606 (La.1984). Moreover, the conservation of court time does not alone justify undue restriction of voir dire examination. Duplessis, at 606 n. 4.
Given the particular circumstances of this case, we find that the Trial Court unduly restricted voir dire by the defense. This case hinged in large part on the jury’s assessment of the credibility of the various witnesses. The employees of Burger King that were called as defense witnesses were allegedly eyewitnesses to the fight and, thus, could have presumably been called as witnesses for the prosecution. The fact that the State chose not to call them as witnesses and that all of the defense witnesses were black and all of the prosecution witnesses white, unfortunately thrust the issue of race into the trial. Accordingly, we find that under the circumstances of this case the Trial Court committed reversible error in limiting the voir dire of the defense.
For the foregoing reasons, the convictions and sentences herein are reversed and set aside, and this matter is remanded to the Trial Court for a new trial.
REVERSED, REMANDED.
BARRY, J., joins in the reversal.
BARRY, Judge, joining in the reversal:
The judicial atmosphere precluded any chance of a fair trial.

. The Trial Court on numerous occasions made its displeasure with defense counsel and defense witnesses clear to the jury. For example:
By Counsel for Favorite:
And, so, you stepped off the sidewalk at the middle of the block, and crossed, and began to cross?
A Yes.
By the Court:
Q Was it in the middle of the block, or was it in front of Flamingo’s?
A Well, it was in front of Flamingo’s.
By Counsel for Favorite:
Which is three buildings down the block. Judge.
By the Court:
Yeah, I heard that. I just wondered if you had.

******

By Counsel for Favorite:
And, you said Warren pushed both of them off?
A Well, she just attacked him, started hitting him on the head. And, he managed — this is the only fight I really remember, is that he had *209 pushed them off, and this is how they got around the corner. As he—
Q —Okay, so, we now have—
By the Court:
—Wait. Wait. Let her finish.
By Counsel for Favorite:
I'm sorry. I didn’t—
By the Court:
Or, you don’t want to hear what she’s got to say.
By Counsel for Favorite:
I thought she was finished. I’m sorry. ******
By Counsel for Favorite:
Alright, let’s find out what she could see, and that’s what I’m doing, Judge.
By the Court:
She already testified to what she saw.
By Counsel for Favorite:
Judge, I’m just trying to set for the Jury, what she could see and what she couldn’t.
By the Court:
Alright, Mr. Burk, counsel for the defendant— of the defendant has already established what she has seen. Now, I’m ordering you not to repeat her testimony.
By Counsel for Favorite:
I’m not, Judge. I am questioning the witness. By the Court:
I don’t care what you’re questioning — you’d better not ask her anything about what she’s already testified to. Now, let’s go.
By Counsel for Favorite:
Are you saying I don’t have a right in defense of my client to question this witness fully? By the Court:
You already had that right. But, you're not going to repeat the testimony.
By Counsel for Favorite:
You’re saying I cannot—
By the Court:
> —You cannot repeat the testimony.
By Counsel for Favorite:
Let the record reflect—
By the Court:
—That she cannot repeat the testimony; How much — how many more times you want me to say it?
By Counsel for Brumfield:
Join in that.
By the Court:
You do, you’re in contempt of Court. Now, take your choice.
******
By Counsel for Brumfield:
Q Demetrius, have you ever seen karate movies?
A Yes.
Q Okay. And, are you familiar with karate moves?
A Yes, it was — it was kind of a karate kick, because it was a double kick up in the air. It made him fell to the ground.
Q Alright.
By the Court:
Q You say you’ve had experience with karate?
A Yes.
Q Can you answer this question for me? What’s the difference between karate and break-dancing?
LAUGHTER
A Spin on the floor — you spin on the floor with break-dancing. And, you kick with your feets with karate.
Q Well, I’ve seen them kicking with break-dancing, too.
LAUGHTER

. See State v. Duplessis, 457 So.2d 604 (La. 1984).

. Voir dire covered 153 pages of transcript, 87 pages of which involved questioning by the defense. Considering the fact that the defendants were represented by separate counsel, each of whom questioned the jurors separately, voir dire by the defense was not unreasonably long. Moreover, we do not find the questioning of jurors by the defense to have been repetitious.

. At the outset of voir dire by the defense, the following transpired:
By Counsel for Favorite:
... Do each of you feel that a person has the right to defend themselves, even if it means taking the life of someone else? Does anyone disagree with that? Could each of you apply this fairly, and follow this law, if the person who was killed was a white male, and the person who is charged, or, the people who are charged are a black male, and a black female? By Prosecutor:
Judge, I have to object to any of this business about race. He knows better than to bring that out.
By Counsel for Favorite:
Your Honor, I’m—
*210 By Prosecutor:
—That is absolutely objectionable.
By the Court:
Objection sustained.
By Counsel for Favorite:
Let the record note an objection to the Court’s ruling.
By Counsel for Brumfield:
I join in that objection.
By the Court:
Very well. Very well. You can't commit a juror to a verdict before he or she is selected as a juror.
By Counsel for Favorite:
Your Honor, nobody tried to do that. We were just trying to see prejudice, that’s all.
By the Court:
Proceed.
By Counsel for Favorite:
We’re trying to eliminate any prejudice.
By the Court:
Proceed, sir. I’ve ruled.
By Counsel for Favorite:
Am I denied the right to ask that question?
By the Court:
No way. I’ve already ruled, didn’t I?