753 So.2d 850 (1999)
STATE of Louisiana
v.
Hymel VARNADO.
No. 97-KA-2825.
Court of Appeal of Louisiana, Fourth Circuit.
September 22, 1999.
Writ Denied April 20, 2000.
*853 Harry F. Connick, District Attorney of Orleans Parish, Richard R. Pickens II, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Attorneys for Plaintiff/Appellee.
Laura Pavy, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, Sr. and Judge ROBERT A. KATZ.
JONES, Judge.
Defendant/appellant, Hymel Varnado, appeals his conviction and sentence for armed robbery, aggravated kidnapping, aggravated rape, and aggravated crime against nature. Varnado was also adjudicated as a multiple offender, and sentenced to serve life imprisonment without benefit of probation, parole or suspension of sentence on each count of aggravated rape, and aggravated kidnapping charge. Varnado also received a total of 210 years in prison for the remaining charges. After a review of the record, we amend the verdict and affirm.

FACTS
There were three separate incidents involving three different victims that led to the arrest, conviction, and sentence of Hymel Varnado.[1]

Incident No. 1
The first incident occurred on July 9, 1995. E.H.[2] testified that she was exiting her vehicle at the Carriage House Apartments on Curran Street in eastern New Orleans, when a man put a gun to her head, and instructed her to get into his car. While driving, the perpetrator asked her if she had any money and she replied that she did not. The perpetrator then took her purse and went through it taking a several things out. The perpetrator then instructed her to get undressed, and to perform oral sex on him. Following oral sex, E.H. testified that the perpetrator proceeded to engage in vaginal intercourse with her. Thereafter, the defendant drove her back to her apartment complex while she got dressed. When she exited the vehicle, the perpetrator threw her keys and her purse out of the car and left the scene. At a police line-up held on August 10, 1995, E.H. identified Varnado as the perpetrator because she saw his face during the altercation. E.H. also identified Varnado as her attacker at trial.

Incident No: 2
K.M. testified that on July 17, 1995, she was exiting her car at her residence when she observed a man standing at the end of her driveway holding a gun, and wearing a ski mask. The man instructed her to get into his car, and asked if she had any money, credit cards, or an ATM card. K.M. replied that she only had $12 or $14, but no ATM or credit cards. The perpetrator told her to give him the money, get undressed, and perform oral sex on him. Following oral sex, the perpetrator proceeded to engage in vaginal intercourse with her. After the altercation, the perpetrator then drove K.M. back to her home and let her out of the vehicle. K.M. testified that during the altercation, she also got a good look at the perpetrator once he removed his ski mask. At trial, K.M. identified Varnado as her attacker, and testified that she identified the defendant at a police lineup on August 10, 1995.

Incident No: 3
The third incident occurred on August 2, 1995, when a black man accosted S.D. at the Kenilworth Apartments with a gun in *854 his hand. The perpetrator forced her into a van, and as he was driving out of the parking lot, he asked her if she had any money. S.D. gave him $80. The perpetrator instructed S.D. to take off her clothes and perform oral sex on him. The perpetrator then instructed S.D. to spread her legs and he proceeded to have vaginal intercourse with her.
S.D. testified that during the incident, she got a good look at the perpetrator's face. S.D. also testified that when the perpetrator released her, she took a bath and went to Charity Hospital to be examined. At the police line-up held on August 10, 1995, S.D. also positively identified Varnado as her attacker, and pointed to the defendant when the State asked her to identify her attacker at trial.
Patsy Daniels, a medical technologist for the Orleans Parish Coroner's office, testified as the State's expert witness. Daniels testified that when she examined E.H.'s rape kit at Charity Hospital, she noticed that the vaginal swabs were all negative for seminal fluid and there was no evidence of spermatozoa on the slides. Daniels also testified that there was a moderate amount of blood found in E.H.'s vaginal vault.
As to K.M.'s rape kit, Daniels testified that the internal and external vaginal swabs were positive for seminal fluid. Daniels also testified that K.M. was having her menstrual period during the time of the incident; thus, K.M.'s external and internal vaginal swabs and slides were very bloody. The external vaginal smear was positive for spermatozoa, but all other specimens were negative for either seminal fluid or spermatozoa.
The external and internal vaginal swabs in S.D.'s rape kit were negative for seminal fluid, and there was no evidence of spermatozoa. Daniels also testified that S.D.'s internal and external swabs and slides were "extremely bloody" because S.D. was also having her menstrual period during the time of her attack.
Daniels testified that it is not necessary that sperm or seminal fluid be present as a result of a rape or some intercourse. However, she conceded that evidence of secretion could be difficult to find if the victim bathe prior to the physical examination. Furthermore, Daniels testified that seminal fluid, spermatozoa or other forms of secretions could be washed out because of the victim's menstruation.
Varnado's stepmother testified as an alibi witness for the defense. She attempted to establish an alibi for Varnado on the nights of the attacks, but she later conceded that she was not certain where Varnado was on those dates. Varnado did not testify at trial.
Following trial, Varnado was convicted of the following: three counts of aggravated rape, two counts of aggravated crime against nature, two counts of aggravated kidnapping, one count of attempted aggravated kidnapping, two counts of armed robbery, and one count of attempted armed robbery. Varnado was sentenced to five life-imprisonment terms without benefit of probation, parole or suspension of sentence for each count of aggravated rape and for each count of aggravated kidnapping. His sentences for the remaining crimes totaled 210 years in prison. Varnado's trial counsel filed an appellate brief, and Varnado filed a pro se brief appealing both his conviction and sentence.

ERRORS PATENT
Defense counsel argues two errors patent concerning the defendant's sentencing. The first error concerns the court's failure to inform the defendant of the prescriptive period for post-conviction relief as required under La. C. Cr. P. Art. 930.8(C).

a. Post-Conviction Relief
After reviewing the record, we find that the trial court did not inform the defendant of the three-year time limitation to file for post-conviction relief, as mandated by La.C.Cr.P. art. 930.8. However, the trial court's failure to inform a defendant *855 of prescriptive period for post-conviction relief does not constitute a ground for reversing the sentence or remanding the case for re-sentencing. La.C.Cr.P. art. 921; State v. Dixon, 96-407 (La.App. 5 Cir. 11/26/96), 685 So.2d 310, 313.[S]uch a defect has no bearing on whether the sentence is excessive, and the defendant was not prejudiced because the prescriptive period does not start running until the judgment becomes final. La.C.Cr.P. art. 920; State v. Robertson, 98-883 (La.App. 3 Cir. 12/9/98), 723 So.2d 500, 503, writ denied 99-0658 (La.6/25/99), 745 So.2d 1187.
Our brethren at the Fifth and Second circuits have held that the appropriate remedy in this situation is for the appellate court to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending written notice to him within ten days of the rendition of the court's opinion and to file written proof that the defendant received the notice in the record of the proceedings. Id; State v. Thomas, 30,490 (La.App. 2 Cir. 4/8/98), 711 So.2d 808, 815, writ denied 99-0331 (La.7/2/99), 747 So.2d 8. Accordingly, this Court orders the district court to send appropriate written notice to Varnado within ten days of the rendition of this opinion and then file, in the record, written proof that Varnado received such notification.

b. Judicial Error in Sentencing
The second error patent concerns the trial judge's comments during sentencing. At sentencing, the trial judge stated that the defendant had been convicted of first degree robbery of E.H., rather than attempted-armed robbery. The trial judge then sentencing the defendant for first-degree robbery. The defense counsel now asks that this Court to examine the conflicting orders and amend the defendant's sentence, if necessary.
According to La. R.S. 14:64, the sentence for someone who commits the crime of armed robbery is no less than five years and not more than ninety-nine years. A defendant convicted of attempted armed robbery shall be sentence to not more than one-half of the longest term of imprisonment prescribed for the offense. See La. R.S. 14:27, and La. R.S. 14:64. However, the sentence for someone who commits the crime of first-degree robbery is no less than three years and not more than forty years.
A district court judge presented with an application to correct an illegally lenient sentence may therefore correct a sentence that he or she imposed by making the necessary changes in the minutes, without bringing the inmate to court, and sending a certified copy of the new minutes to the inmate and to the relevant prison authorities, who otherwise lack the discretion to make the amendments themselves in the documents they receive from the sentencing court pursuant to La.Code Crim.Proc. art. 892.
State v. Harris, 93-1098, 94-2243 (La.1/5/96), 665 So.2d 1164.
The defendant in the instant case was sentenced to serve 30 years for first-degree robbery, which we find to be an error in the record. Nevertheless, we find that the sentence is also within the sentencing guidelines for attempted armed robbery. Moreover, the record adequately articulates the trial court's reasoning for imposing the thirty-year sentence.
Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with [La.C.Cr.P. art. 894.1]. State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647. The sentencing court is given wide discretion in imposing a sentence within the statutory limits, and such a sentence should not be set aside as excessive in the absence of manifest abuse of discretion by the sentencing court. Id.Where the defect in sentencing does not involve the exercise of discretion, the sentence may be corrected on appeal by amendment rather than remand. State *856 in Interest of H.L.F., 97-2651 (La.App. 4 Cir. 5/20/98), 713 So.2d 810, 813.
Therefore, we amend the verdict to reflect that Varnado was convicted for attempted armed robbery in count no. 15, not first-degree robbery. In all other respects, the sentence is affirmed.

PREJUDICIAL COMMENTS MADE DURING TRIAL
In these assignments of error, Varnado argues that the prosecutor made several prejudicial statements during his closing arguments. Varnado also alleges that the trial judge misstated a stipulation by the defense counsel in the record, and that the trial judge referred to Varnado's previous crimes while in the presence of the jury.
In order to determine that the statements made by the prosecutor and the judge so prejudiced the jury as to call for reversal of the conviction, this Court must decide if the jury's verdict would have been the same had the comments not been made. State v. Green, 416 So.2d 539, 542 (La.1982); State v. Moore, 534 So.2d 1275, 1278 (La.App. 4 Cir.1988), writ denied, 560 So.2d 21 (La.1990).
In Green, the Supreme Court held that the prosecutor's remarks during his closing arguments were not of such an inflammatory nature as to have prejudicial impact on the jury. Id. at 542. The Supreme Court also opined that the evidence in the case was so overwhelming that the comments made by the prosecutor did not contribute to the verdict Id. at 542.
In this case, the prosecutor made comments concerning the defendant's gold teeth, and he speculated about whether or not the defendant had tattoos and gold teeth at the time that the crimes took place. Though, the defense counsel continuously objected to the comments that were made, the prosecutor used the defense counsel's repeated objections as signs of the defendant's guilt. Yet, the trial judge admonished the jury to disregard the prosecutor's remarks about the number of objections made by defense counsel. Considering that the trial court admonished the jury to disregard the prosecutor's remarks, we find that the comments complained of herein did not prejudice this jury's verdict, considering that the trial judge found that a simple admonishment in this case to be sufficient. See La.C.Cr.P. art. 771; see State v. Ward, 96-1588 (La.App. 4 Cir. 3/4/98), 712 So.2d 139, writ denied, 98-1072 (La.10/9/98), 726 So.2d 17.

a. Identity
The defendant alleges that when the judge restated the defense's stipulation regarding when the defendant acquired his gold teeth, the trial judge improperly referred to the defendant's police rap sheet. Varnado argues that the trial judge's comments substantially prejudiced the jury when it referred to the defendant's prior record in 1994. Varnado also argues that this comment violated the prior bad-acts rule found in La. C.E. art. 404 B. We disagree.
A direct or indirect reference to another crime committed or alleged to have been committed by the defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney or a court official, during trial or in argument, would require a mistrial on motion of defendant. La. C.Cr.P. art. 770; State v. Williams, 383 So.2d 996, 1002 (La.1979). (Emphasis added).
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. State v. Johnson, 96-0950, (La. *857 App. 4 Cir. 2/4/98), 706 So.2d 468, 477. (Emphasis added).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the State to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Chism, 591 So.2d 383 (La.App. 2 Cir.1991).
The defense counsel, in the instant case, asked that the stipulation be made that according to a police rap sheet the defendant had two gold teeth "as early as September 1994." The judge restated the stipulation saying that in a police rap sheet "dated back to September of 1994" the defendant had two gold teeth. The trial judge was not referring to previous arrests or convictions. The trial judge was merely referring to the facts surrounding the defendant's identity, which is admissible. Notwithstanding the trial judge's comments, the victims in this case positively identified Varnado as their attacker at the police line-up in August 1995, and at trial without even viewing the defendant's teeth.
Therefore, we find no merit to the defendant's objection regarding the trial judge's restatement of the defense's stipulation.

b. Burden of Proof
Next, Varnado argues that the prosecutor's reference to the defense having "equal access" to the DNA evidence in his closing argument was an intent by the State to show that its was the defendant's responsibility to perform DNA tests to prove his innocence. This comment, Varnado argues, was an intent by the State to shift the burden of proof from the State to the defense. We disagree.
Under [the] Louisiana Constitution, every defendant is innocent until proven guilty. La. Const. Article I § 16 (1974). The State bears the burden of proving guilt beyond a reasonable doubt." State v. Fluker, 618 So.2d 459, 463 (La. App. 4 Cir.1993). However, the prosecutor retains considerable latitude in making closing arguments; even when the reviewing court has found that the prosecutor has exceeded that latitude; the reviewing courts have criticized the improper arguments without finding that they constitute reversible error. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Furthermore, the reviewing court will not overturn a verdict on the basis of improper argument unless the court is firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict. Id. (Emphasis added).
The State's reference to the fact that the defense had "equal access" to all of the DNA evidence being introduced at trial was merely showing the jury that the defense had the option to refute the State's DNA evidence with DNA evidence of his own. Considering the overwhelming weight of the evidence presented by the State against Varnado, we find no merit to the defendant's argument that the prosecutor's comments substantially prejudiced the jury.

c. The Judge as a Neutral Arbiter
In his third assignment of error, Varnado contends that the actions of the prosecutor and the trial judge, during rebuttal arguments, gave the appearance that the judge had abandoned his role as neutral arbiter.
The Louisiana Code of Judicial Conduct, Canon 3, states in pertinent part:
(4) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, and shall not permit staff, court officials or others subject to the judge's direction and control to do so.
(5) A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice against parties, witnesses, *858 counsel or others. (Emphasis added).
In State v. Duplessis, 457 So.2d 604 (La.1984), the Supreme Court held that when the behavior of the prosecutor and the trial judge gives the appearance of that the trial judge is abandoning his the role of neutral arbiter, "a new trial is the only means of affording the defendant a fair opportunity to have the jury decide his guilt or innocence." See also State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98), 708 So.2d 1099, writ denied 98-0643 (La.8/28/98), 723 So.2d 415. In Duplessis, the prosecutor repeatedly made remarks that were unfounded. When the defense objected, the trial judge instructed the defense counsel not to interrupt closing arguments and chastised the defense counsel in front of the jury. The remarks made by the prosecutor during his closing arguments combined with the trial court's restrictions on defense counsel so prejudiced the jury that the defendant's conviction was reversed and the case was remanded. State v. Duplessis at 610.
Unlike Duplessis, the trial judge, in the instant case, did not restrain the defense counsel from interrupting the prosecutor's closing argument. In fact, the trial court did not chastise the defense counsel at any time. However, the trial judge in the instant case sustained the defense counsel's objections when the defense objected to the prosecutor's reference to the number of objections made by the defense during the prosecutor's closing arguments. The portion of the record that reflects the substance of this assignment of error is as follows:
MR. WHITTAKER (DEFENSE COUNSEL):
Your Honor, I'm going to offer into evidence the first page of the rap sheet. I think it's gonna show that there was gold teeth in Mr. Varnado's mouth on the date of his arrest.
MR. FREEMAN (ASSISTANT DISTRICT ATTORNEY):
I think that's improper during my closing argument.
THE COURT:
We'll take that up after you all are finished this argument.
Proceed.
MR. WHITTAKER:
Well, I just think it's improper, Judge, to mislead the jury intentionally. I don't think that's right.
THE COURT:
I agree with you, that is. It is improper to do something intentional to mislead this jury intentionally. That is correct.
MR. FREEMAN:
But you are not saying that I am intentionally doing
THE COURT:
I'm not making any comments one way or the other, Mr. Freeman. Proceed.
MR. FREEMAN:
You see Mr. Whittaker constantly stepping up? It's getting too close to the truth
MR. WHITTAKER:
Judge, I object. Again, that's improper. My job is to object when it's proper to do so and I think these are proper objections.
THE COURT:
I'm going to sustain that objection. You cannot comment on his objections. You can't argue the objections he makes. That's improper.
Thus, if the effect of the judge's question or comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires reversal. State v. Green, 231 La. 1058, 93 So.2d 657 (1957); see State v. Colligan, 95-880 (La. App.3 Cir. 8/7/96), 679 So.2d at 190.
The no-judge comment rule is designed to safeguard the role of the jury as the *859 sole judge of the facts on the issue of guilt or innocence. Thus, if the effect of a comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires a reversal. (Emphasis added).
State v. Walker, 97-1180 (La.App. 3 Cir. 3/6/98), 710 So.2d 304, 305. The trial judge in the instant case did not express a position with respect to the prosecutor's comments, but merely stated that he would delay ruling on the objection until both parties concluded closing arguments. Additionally, the trial judge stated that he would not make "any comments one way or the other."
Further, the trial judge instructed the jury that the evidence they must rely on is not what is argued in closing arguments but what they heard from the witnesses on the witness stand and the evidence admitted during trial. Moreover, the trial judge in Duplessis did not attempt to cure any improper prosecutorial statements like the trial judge here. Thus, we do not find that the trial judge in this case gave the appearance of abandoning his role as neutral arbiter. This assignment of error is without merit.

INSUFFICIENT EVIDENCE
The defendant contends in this assignment of error that there was insufficient evidence at trial to prove that he committed the crimes charged beyond a reasonable doubt. The defendant claims that victim's identification without physical corroborative evidence is not sufficient to sustain his convictions because the eyewitnesses' testimony has been proven inherently unreliable. We disagree.
When evaluating sufficiency of evidence to support a guilty verdict, the appellate court must determine if any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see also State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996).
In State v. Johnson, 96-0950 (La. App. 4 Cir. 8/20/97), 706 So.2d 468, writ denied, 98-0617 (La.7/2/98), 724 So.2d 203, the defendant was charged and convicted of aggravated rape and forcible rape. On appeal, the defendant claimed that there was insufficient evidence to sustain his convictions because the victim's testimony without physical evidence was insufficient. This Court held that "a victim's testimony alone, without corroborating physical evidence, is sufficient to establish that a rape occurred." Id. at 475. Unless the jury's findings are clearly contrary to the evidence presented at trial, a jury's decision should not be disturbed. Id. at 475.
Though the physical evidence in this case is not definitive of rape, the three victims gave similar descriptions of their attacker following the altercations, and all three victims chose the same person as their attacker at a police lineup and at trial.
A trier of fact has great discretion in its determination of the credibility of witnesses, and such determination will not be disturbed unless it is clearly contrary to the evidence. State v. Brown, 620 So.2d 508, 515 (La.App. 4 Cir.1993), writ denied, 625 So.2d 1062 (La.1993). This Court has previously held that the testimony of the victim alone is sufficient to prove the elements of the offense. See State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1084, writ denied, 95-2557 (La.2/2/96), 666 So.2d 1087. Therefore, we will not disturb the jury's findings of guilt considering that their findings are not contrary to the evidence.

INSUFFICIENT EVIDENCE OF ARMED ROBBERY
In this assignment of error, Varnado contends that there was insufficient *860 evidence to support his conviction of armed robbery of K.M., which is a violation of La. R.S. 14:64.
La. R.S. 14:64 states, in pertinent part:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. (Emphasis added).
Defense counsel claims that the "taking element" of the statute was not satisfied. The defendant also argues that the colloquy between the State and the victim does not establish that Varnado took the victim's money. Again, we disagree.
All evidence, direct and circumstantial, must meet the [Jackson v. Virginia ] reasonable-doubt standard. State v. August, 96-2777 (La.App. 4 Cir. 9/16/98), 719 So.2d 536, writ denied, 98-2523 (La.1/15/99), 736 So.2d 206.[W]hen circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. Id; see also State v. Shapiro 431 So.2d 372 (La. 1982).
At trial, K.M. testified to the following:
THE STATE:
Q. Could you tell us what happened then?
WITNESS
A. Then he put the gun between his legs and started the car up and put on a ski mask. And as he was driving down the street, he wanted to know if I had any money and I said, "Yes, I guess about twelve or fourteen dollars," and he said, "Give me your money."
DEFENSE COUNSEL:
Q. What physical property did you lose in this altercation, some cash?
WITNESS:
A. Cash.
The property taken in a robbery must be sufficiently under the victim's control that, absent force or intimidation, the victim could have prevented the taking. State v. Hill, 598 So.2d 1269, 1271 (La. App. 4 Cir.1992).
K.M. testified that she had money when she was abducted. While in Varnado's vehicle, Varnado demanded that she give him her moneythe $12 or $14 she had in her purse. When Varnado took her home, K.M. realized that the money was missing from her purse. K.M.'s testimony that her assailant was armed and demanded her money, coupled with the fact that she did not have the money following the altercation is sufficient for the trier of fact to assume that the money was taken from K.M. by the defendant.
Absent internal contradictions or irreconcilable conflict with physical evidence, the testimony of an eyewitness that she observed all the elements of the offense, couple with the identification of the defendant as the culprit, is generally sufficient to support a conviction. State v. Green, 27,652 (La.App. 2 Cir. 1/24/96), 666 So.2d 1302, 1306, writ denied, State ex. rel. Green v. State, 97-0504 (La.10/31/97), 703 So.2d 14.
Moreover, the two other incidents for which the defendant is charged followed the same fact pattern as K.M.'s attack from abduction to release. Thus, we find that the victims' identification of Varnado as their attacker, and the circumstantial evidence regarding the similar patterns of how the crimes were committed to substantiate the defendant's guilt beyond a reasonable doubt.

DECREE
For the foregoing reasons, we amend the jury's verdict to reflect that Hymel Varnado was convicted of attempted-armed robbery of in count number 15. In all other respects, the conviction and sentence are hereby affirmed.
*861 AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] The State charged Varnado with over twenty counts of aggravated rape, aggravated kidnapping, and armed robbery. However, the State nolle proseque nineteen of those charges because the State had sufficient evidence with these three incidents to convict and sentence Varnado for the rest of his natural life.
[2] The victims' names have been deleted for privacy reasons. Initials are being used.