464 So.2d 922 (1985)
STATE of Louisiana
v.
Jerry J. SANTEE.
No. KA-2127.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1985.
*923 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for appellee.
Numa V. Bertel, Jr., M. Craig Colwart, Orleans Indigent Defender Pro., New Orleans, for appellant.
Before LOBRANO, WARD and ARMSTRONG, JJ.
LOBRANO, Judge.
Defendant, Jerry Santee, was charged by bill of information with the June 26, 1983 manslaughter of Glen Francoise, a violation of LSA R.S. 14:31.[1] On July 22, 1983 defendant was arraigned and pled not guilty. Trial was held on January 9th and 10th, 1984 and defendant was found guilty as charged by a twelve person jury. On January 20, 1984 the state filed a multiple bill *924 alleging defendant to be a Habitual Offender under LSA R.S. 15:529.1. Defendant pled guilty to the multiple bill and was sentenced to forty-two (42) years in the custody of the Department of Corrections.

FACTS:
At approximately 2:00 a.m. on June 26, 1983, Glen Francoise was shot and killed in front of a residence located at 2632 Dumaine St. in the City of New Orleans.
Willie Cooper, Jr., a resident of 2632 Dumaine St. testified that shortly before the shooting, while lying in bed, he heard the victim and the defendant arguing in the kitchen. They went into the bedroom while continuing to argue. Cooper told them to go outside. Shortly thereafter he heard two shots. Defendant came back into the house and ran toward the back.
Lawrence McCormick testified that he was sitting on the hood of a car outside the Dumaine Street residence talking with some friends around 1:00 a.m. the night of the shooting. He observed the defendant and victim drive up in the victim's car. Both men were arguing. They entered the Dumaine Street residence. McCormick could still hear them arguing. A few minutes later, the victim exited the house. He asked McCormick's companion, Alvin Broussard, for a light for his cigarette. The victim then started walking back toward the house. The defendant came out of the house and fired one shot hitting the victim in the chest. He then fired a second shot and ran back inside. Alvin Broussard, on rebuttal, testified to the same series of events.
Joe Nixon, the victim's brother, testified that he was sitting on a porch across the street when the victim and the defendant drove up. Both men were arguing as they exited the car. Nixon saw them go into the Dumaine Street residence. Then he observed the victim leave the house. The defendant came to the door and shot the victim. He then fired a second shot at Nixon, missing him.
Dr. McGarry, the pathologist who autopsied the victim's body, testified the victim died as a result of that gunshot wound.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1) The trial court erred in dismissing juror Brenda Pearson for cause;
2) The trial court erred in overruling the defense objection as to the hearsay testimony of Willie Cooper, Jr.;
3) The trial court erred in sentencing the defendant to the maximum sentence on a multiple bill.

ASSIGNMENT OF ERROR 1:
Defendant contends that the trial court erred in dismissing juror Brenda Pearson for cause.
During voir dire, this prospective juror testified that she would "feel very uncomfortable about sending a black man to jail". Upon further questioning, she responded "yes" to the question that she could listen to the evidence, and if the state proved its case, vote guilty. Despite this response, the trial judge held the state's challenge for cause was proper.
La.C.Cr.P. Art. 800(B) provides:
"The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law."
Assuming defendant's argument is correct that the trial court should not have excused Miss Pearson for cause, defendant can only complain if the state had exhausted all of its peremptory challenges. State v. James, 431 So.2d 399 (La.1983) cert. denied, James v. Louisiana, ___ U.S. ___, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983). A review of the record clearly shows the state had used only three of its eight peremptory challenges.[2] Defendant has no *925 grounds for complaint. This assignment of error is without merit.

ASSIGNMENT OF ERROR 2:
Defendant contends that the trial court erred in overruling defendant's objection to the testimony of Willie Cooper, Jr. on grounds of hearsay. Cooper testified to the contents of the argument between defendant and the victim shortly before the shooting.
The law is clear that hearsay evidence is inadmissible except as otherwise provided. LSA R.S. 15:434. One exception to the rule of inadmissibility of hearsay is when the statements form part of the res gestae of the crime:
"Res gestae are events speaking for themselves under the immediate pressure of the occurence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence." LSA R.S. 15:447.

The requirements for statements to be considered res gestae are as follows:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." LSA R.S. 15:448.

The doctrine of res gestae includes not only spontaneous utterances and declarations made before and after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after commission of the crime if the continuous chain of events is evident under the circumstances. LSA R.S. 15:448; State v. Molinario, 383 So.2d 345 (La.1980), cert. den. 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106 (1980); State v. Drew, 360 So.2d 500 (La.1978); cert denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979).
If the statements form part of one long uninterrupted chain of events, res gestae applies. State v. Billiot, 421 So.2d 864 (La.1982).
In the instant case, all the witnesses for the prosecution testified that the victim and defendant were arguing when they exited the car and continued to argue inside the house and that this argument immediately preceeded the shooting of the victim.
The statements testified to by Cooper were all made during the argument which led to the victim's death and as such were admissible under the "res gestae exception" to the hearsay rule.
Even assuming arguendo that these statements should not have been admitted, the error is harmless because three witnesses, besides Cooper, testified that the argument occured and that they saw defendant shoot the victim. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Gibson, 391 So.2d 421 (La.1980). This assignment of error is without merit.

ASSIGNMENT OF ERROR 3:
Defendant contends that the trial court erred in sentencing him to the maximum sentence pursuant to a multiple bill.
On January 20, 1984, the state filed a multiple bill alleging defendant had two prior felony convictions; one for receiving stolen property valued over $500.00, a violation of LSA R.S. 14:69 and one for possession of heroin, a violation of LSA R.S. 40:966. Defendant pled guilty to the multiple bill.
In addition to the felonies alleged in the multiple bill, the trial judge considered the fact that defendant had previously been convicted of being a felon in possession of a firearm. During the sentencing hearing, the trial court stated that this killing was defendant's fourth felony conviction and that one other felony conviction involved a *926 weapon. Defendant did not offer anything in mitigation for the trial court to consider. Consequently, defendant was sentenced to serve forty-two (42) years at hard labor, the maximum penalty that could be imposed. Defendant asserts the maximum penalty is excessive.
Article I, Section 20 of the Louisiana Constitution of 1974 provides that "no law shall subject any person ... to cruel, excessive or unusual punishment." The imposition of a sentence, even though within statutory limitations, may still violate this provision and is subject to appellate revision. State v. Thomas, 447 So.2d 1053 (La.1984); State v. Soco, 441 So.2d 719 (La.1983).
A sentence is excessive and unconstitutional if it is "grossly out of proportion of the severity of the crime" or "is nothing more than the purposeless and needless imposition of pain and suffering". State v. Telsee, 425 So.2d 1251 (La.1983); State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980).
In sentencing a defendant, the trial court must indicate the factors it has considered in imposing the sentence. Louisiana Code of Criminal Procedure Article 894.1 sets forth the criteria to be used by the trial court in its sentencing determination.
The trial court need not articulate every factor but it must indicate that it has considered the 894.1 guidelines, both aggravating and mitigating, in tailoring a particular sentence for a particular defendant convicted of a particular crime. State v. Guiden, 399 So.2d 194 (La.1981) cert. denied, Guiden v. Louisiana, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982); State v. Franks, 373 So.2d 1307 (La.1979), affirmed in part, 391 So.2d 1133 (La.1980), cert. denied, Franks v. Louisiana, 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 818 (1981). In compliance with law, the sentencing record should reflect the trial court considered the personal history of the defendant in addition to the seriousness of the crime and the past criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La.1982), affirmed on remand 446 So.2d 1210 (La.1984); State v. Jones, 398 So.2d 1049 (La.1981); State v. Molinet, 393 So.2d 721 (La.1981).
In complying with Article 894.1, the trial judge is given great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Bradley, 414 So.2d 724 (La.1982). However, the reviewing court should determine whether the sentence imposed is too severe in light of the particular defendant and the particular crime. Maximum sentences are particularly suspect since they are reserved for the most serious violation of the charged offense and the worst kind of offender. State v. Guajardo, 428 So.2d 468 (La.1983); Telsee, supra; Quebedeaux, supra; Jones, supra.
In the instant case defendant contends that none of his previous convictions involved violence and therefore, he should not have received the maximum sentence. There is nothing in the law, either statutory or jurisprudential that mandates that previous felony convictions must involve violence for the maximum sentence to be imposed. In Quebedeaux, supra, the defendant was convicted of multiple burglary and was sentenced to twelve (12) years at hard labor, the maximum penalty which could have been imposed under LSA R.S. 14:62. In reviewing that sentence for excessiveness, the Louisiana Supreme Court found defendant's record categorized him as one of the worst kind of offenders in the light of adequate compliance with C.Cr.P. Art. 894.1. The defendant's record in Quebedeaux, supra contained only one previous felony for simple burglary.[3]
*927 A review of the record indicates the trial court adequately complied with C.Cr.P. Art. 894.1. He did not abuse his discretion in finding that defendant was "the worst kind of offender" for which the maximum penalty is reserved. In view of defendant's previous record, incarceration for the maximum term allowable is warranted.
This assignment of error is without merit.

ERRORS PATENT:
La.C.Cr.P. Art. 920(2) requires review of the record for errors patent. We find none.
For the foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] LSA R.S. 14:31:

Manslaughter is:
"(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 and 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
[2] La.C.Cr.P. Art. 799:

"In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have eight peremptory challenges, and the state eight each for each defendant. In all other cases, each defendant shall have six peremptory challenges, and the state six for each defendant."
NOTE: La.R.S. 14:31 provides that manslaughter is necessarily punishable by imprisonment at hard labor.
[3] Quebedeaux, supra at 1014, footnote 7.

"Defendant had juvenile delinquency adjudications in 1962 and 1964, a misdemeanor conviction in 1966 for theft for value less than $20, and then in 1967 his only prior felony conviction for two counts of simple burglary, when he was probably around nineteen years old. His record shows no convictions of any sort for an eleven year period through 1977 when he had a misdemeanor conviction for hit and run and at some unspecified time thereafter, a deferred sentence and unsupervised probation for a misdemeanor conviction for simple battery."