534 So.2d 1275 (1988)
STATE of Louisiana
v.
Thomas MOORE.
No. KA-8949.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 1988.
On Rehearing November 29, 1988.
*1276 Harry F. Connick, Dist. Atty., William A. Marshall, Asst. Dist. Atty., Beryl M. McSmith, Asst. Dist. Atty., New Orleans, for State of La.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
Before SCHOTT, KLEES and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant Thomas Moore appeals his conviction for forcible rape, alleging that testimony concerning a prior incident involving a different victim was improperly admitted by the trial court. He also alleges that his 40-year maximum sentence is unconstitutionally excessive.
The prosecutrix in this case claims that she was raped twice by the defendant and forced to submit to oral sex sometime in the late night hours of May 13, 1985 and/or early morning hours of May 14, 1985. The defendant was charged with aggravated rape, a violation of LSA-R.S. 14:42, and with aggravated crime against nature, a violation of LSA-R.S. 14:89.1, by a true bill of indictment on May 30, 1985. He pled not guilty to both charges on June 12, 1985, but was found guilty of forcible rape, a violation of LSA-R.S. 14:42.1, and not guilty of aggravated crime against nature by a jury on January 14, 1986. Moore was sentenced to forty years at hard labor with credit for time served on March 4, 1986. We reverse and remand.
The record establishes that the prosecutrix, the defendant and a friend of the prosecutrix spent most of the day May 13 together, after meeting casually at approximately 11:30 a.m. at the Southern University New Orleans (SUNO) university center, where the defendant was showing some pictures he had taken at a pool party two weeks earlier. The three bought lunch at a Wendy's drive-in and ate together at the defendant's home at 832 Sixth Street, then drove around the lakefront area in a jeep owned by Moore's godfather; the prosecutrix did most of the driving. They dropped the prosecutrix's friend off at her uptown home sometime around 8 p.m., then returned to the defendant's house. While they were at defendant's house two of the defendant's friends visited. The prosecutrix left the defendant's house driving the jeep sometime around 9 or 9:30 p.m., but returned later. The alleged rapes occurred after she returned.
The parties who testified at the trial agree on the above general facts; however, they disagree concerning details of the incident. The prosecutrix and her friend say the defendant encouraged her to drive the jeep; the defendant claims the prosecutrix took the keys and started driving without his permission. The prosecutrix claims that she went to the defendant's house after taking her friend home only because he said he needed to pick something up before taking her home to New Orleans East; the defendant claims the prosecutrix took him home because they had agreed *1277 that he would allow her to use the jeep that night if she came back to spend the night with him. The prosecutrix testified that she was frightened of the defendant and that she returned to his house after he let her leave in the jeep alone only because he had threatened to call the police and report the jeep stolen if she didn't come back by midnight; she claims she intended to put the keys on the porch and leave. The defendant claims he was asleep when the prosecutrix returned after midnight, but that she woke him up and they had sex, just as they had planned to do. The prosecutrix stated that the defendant threatened her with his dogs and a sword and gave her a choice between having sex with him or his dog. The defendant admits that he and the prosecutrix had sex one time, but claims that she consented. He denies that he had oral sex with the prosecutrix.
Sometime early May 14, 1985, the prosecutrix's mother became concerned because her daughter had not come home and contacted the police. The prosecutrix's friends then led the police to the defendant's house at about 5:30 a.m., where defendant answered the door, completely nude. The police asked if the prosecutrix was there and the defendant said she was and called her. She came out of the bathroom and initially told the police that she was all right. When a female police officer arrived on the scene, the prosecutrix told her she had been raped.
The defendant makes the following three assignments of error:
1. The trial court erred in denying a mistrial when the prosecutor mentioned a [State v.] Prieur [277 So.2d 126 (La. 1973) ] incident in his opening statement, and told the jury that they would see the similarities between the Prieur incident and the instant offenses, "as Judge Quinlan ruled."
2. The trial court erred in admitting the Prieur evidence when consent was the only issue.
3. The trial court erred in imposing an excessive sentence.
Failure to Declare a Mistrial
The defendant contends that the trial court erred in failing to declare a mistrial when the prosecutor, in opening statement, referred to a prior incident involving a different victim and stated that the jury would note the similarities between that incident and the instant offense "as Judge Quinlan ruled," apparently referring to the fact that the trial judge had decided during pre-trial motions to admit testimony concerning the previous incident.
Mandatory mistrials are governed by La. C.Cr.P. art. 770, which provides as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
The defendant concedes that the comments of which he complains do not fall within the above categories, which require a mistrial, but contends that a mistrial was nevertheless warranted under the court's discretionary power.
To decide whether to declare a mistrial based on comments which do not fall within the mandatory mistrial provisions of the above article, the court must determine whether the remarks contributed to the *1278 jury verdict. State v. Green, 416 So.2d 539 (La.1982). A mistrial is then warranted only when the comments result in substantial prejudice to the defendant which deprives him of a fair trial. State v. Cushenberry, 407 So.2d 700 (La.1981). The defense must show that the remarks influenced the jury and contributed to the verdict. State v. Fluker, 454 So.2d 358 (La. App. 4th Cir. 1984).
The defense has made the required showing. As discussed below, testimony concerning the prior incident was improperly admitted by the trial judge. Therefore, this assignment of error does have merit.
Admission of the Prieur Testimony
In his second assignment of error, the defendant complains of the admission of testimony of a woman, who was a victim of an incident involving the defendant which occurred approximately one year prior to the incident involving the prosecutrix in this case. Like the prosecutrix, the woman testified the defendant got very upset when she announced that she had to leave after they had spent the afternoon together. Her story was very similar to the prosecutrix's story concerning such details as the defendant's alleged use of the dogs and the sword to threaten both women. The victim of the previous incident got away and the defendant pled guilty to aggravated assault.
Because of the substantial risk of grave prejudice from evidence concerning unrelated acts of misconduct, courts generally disallow testimony concerning other crimes committed by a defendant. State v. Prieur, 277 So.2d 126, 128 (La.1973). The rationale for the Prieur rule is that the state must prove beyond a reasonable doubt that the accused committed the crime with which he stands charged in order to establish guilt. State v. Ledet, 345 So.2d 474, 477 (La. 1977). Evidence that the defendant may have committed the charged offense simply because he is a bad man who committed other crimes on other occasions is not sufficient to establish guilt. Id. Certain exceptions to the Prieur rule have been developed, both by statute and by jurisprudence. Under LSA-R.S. 15:445 and 446, evidence of acts similar to the charged offense is admissible to show intent, knowledge or system. Additionally, the Louisiana Supreme Court has allowed evidence of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Ballard, 351 So.2d 484 (La. 1977).
The Prieur rule was expanded and explained by the Louisiana Supreme Court in State v. Hatcher, 372 So.2d 1024 (La.1979), as follows:
In order to be admissible the extraneous offense evidence must meet several tests: (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence must be so substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character; (4) the other crimes evidence must tend to prove a material fact genuinely at issue; (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.
Id. at 1033. (Citations omitted.)
The prior crimes evidence admitted in the instant case fails to meet the above test because it fails to tend to prove a material fact genuinely at issue. The only issue in the instant case is whether the victim consented to the sexual contact. Where the only issue in a prosecution for rape is that of consent, other offenses are usually held to be inadmissible. Id. at 1034, n. 1. Any evidence concerning lack of consent by other victims is not probative concerning lack of consent by the prosecutrix in the instant case. Id. In the same way, the other crimes evidence is inadmissible to prove system or modus operandi because the fact that the defendant resorted to using force to commit a different crime has no *1279 probative value concerning his use of force in the instant case. Id. Therefore, admission of the other crimes evidence under the facts of the instant case constitutes reversible error.
We reject the State's argument that affirmance is required in this case based on its contention that any error caused by the admission of the Prieur evidence was "cured" when the defendant took the stand and admitted on cross examination that he pled guilty to the previous offense and that "almost all the testimony" of the previous victim was true. Acceptance of this theory would compromise the defendant's right to decide whether to testify in his own behalf or to exercise his constitutional right to remain silent at trial. Once the trial judge improperly ruled that the Prieur evidence was admissible, the defendant may have felt that he was forced to take the stand in his own behalf. Had the trial judge ruled the evidence of the previous incident inadmissible, the defendant might have considered his chances for acquittal good enough that he did not need to testify, and chosen to remain silent.
Since we find that the defendant's conviction must be reversed on the basis of the first two assignments of error, discussion of the alleged unconstitutionally excessive sentence is unnecessary.
For the above and foregoing reasons, the defendant's conviction for forcible rape is reversed. The case is remanded to the trial court for retrial without the testimony concerning the Prieur incident.
REVERSED AND REMANDED.
ON APPLICATION FOR REHEARING
We granted rehearing to reconsider our original decision that the trial court erred in admitting the evidence of other crimes. We now reverse our original decision and affirm the trial court's conviction of the defendant.
Introduction of Prior Crimes Evidence
In our original opinion, we relied on the five-part test established in State v. Hatcher, 372 So.2d 1024 (La.1979) to determine that the other crimes evidence was improperly admitted in the instant case. Generally, under LSA-R.S. 15:445 and 15:446, evidence of acts similar to the charged offense is admissible only to show intent, knowledge or system. In our original opinion, we opined that the evidence was improperly admitted because consent was the only issue in this case.
Since then, we have been referred to State v. Talbert, 416 So.2d 97 (La.1982), which is factually similar to the instant case. In Talbert, the Louisiana Supreme Court allowed admission of a prior sexual act with the same prosecutrix, saying the evidence was admissible to prove intent or modus operandi exceptions to the other crimes exclusionary rule. With regard to the issue of intent, the court concluded:
With respect to intent, it was the defendant who put the question of intent at issue by contending that he only intended to, and did, pay Ms. James to have intercourse with him.... Normally if the act is proved, there can be no real question as to intent. However, under the facts of this particular case there is a real issue of the defendant's intent to have intercourse without the victim's consent. Defendant's argument that intent is not an issue because he admits to having intercourse with the victim is incorrect. The issue is intent to perform the act without the victim's consent. Evidence of the prior incident is admissible to prove that intent.
Id. at 100.
The relationship between intent and consent as discussed in Talbert is particularly relevant to the proper resolution of the instant case. Although the defendant here did not claim that the victim paid him to have sex with her, almost all the other statements in the above analysis from Talbert are true in the instant case. This defendant also placed his intent to have sex with the prosecutrix without her consent at issue when he claimed that she agreed to the sexual contact. Therefore, because intent was an issue in the case, the prior crimes evidence was properly admitted by the trial court under the express provisions of LSA-R.S. 15:445.
*1280 Excessiveness of Sentence
Since we have decided to reinstate the defendant's conviction, we must now consider the defendant's second assignment of errorthat the 40-year maximum sentence for forcible rape imposed by the trial judge was excessive.
The Louisiana Constitution prohibits the imposition of excessive punishment. La. Const. art. I, section 20. Trial judges are vested with wide discretion in imposing sentences; however, that discretion is not unbridled. State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982). A sentence may be found unconstitutionally excessive when considered in light of the particular defendant and the circumstances of the particular crime even if it falls within the statutory limit. Id.
This principle is especially relevant when the maximum penalty has been imposed. Maximum sentences are considered particularly suspect because they are reserved for the most serious violation of the charged offense and the worst kind of offender. State v. Santee, 464 So.2d 922, 926 (La. App. 4th Cir.1985). Maximum sentences can be justified only in cases classified as "extreme" by the factual circumstances of the offense and the apparent dangerous proclivities of the defendant. State v. Ransome, 441 So.2d 425, 428 (La.App.2d Cir.1983). "Nothing else will justify the great sentencing discretion given the trial judge in Louisiana." State v. Jones, 398 So.2d 1049, 1053 (La.1981).
La.C.Cr.P. art. 894.1(C) requires that the trial judge state for the record the considerations taken into account and the factual basis therefor in imposing sentence. The judge in the instant case made the following statement at the sentencing hearing:
All right. For the record, the Court had [sic] reviewed the provisions of Article 894.1, the sentencing guidelines in the Code of Criminal Procedure. The Court Based upon the particular facts of this rape that the defendant was found guilty of forcible rape on, the testimony at the trial of the prieur [sic] incident, the testimony at the trial of the incident in Atlanta, Georgia and Los Angeles, the Court feels that there would be an undue risk that during any period of suspended sentence or probation that the defendant would commit other crimes. Based upon his previous record and the facts of this case, the Court feels that he is in need of correctional treatment and a custodial enviroment [sic] and the Court believes based on his previous record and his problems with women. The Court believes that any lesser sentence than it is going to give would depricate [sic] the seriousness of the defendant's crime.
The Court has reviewed the mitigating-type circumstances also in Article 894.1. The Court does not believe that number one applies because the defendant's criminal conduct, in fact, in being convicted of forcible rape, did cause serious harm to the victim in this matter. The Court believes number two does not apply because the defendant obviously did contemplate that his criminal conduct would cause serious harm. Number three does not apply because there was obviously no strong provocation for the rape that this defendant committed upon the victim in the instant case. The Court believes number four does not apply because there were no grounds tending to excuse or justify the defendant's criminal conduct. The Court is aware that the defense in this matter was consent. The jury obviously did not believe it. The Court did not believe it either. So, therefore, the Court does not think that number five would apply that the victim induced or facilitated the defendant's criminal conduct. Number six does not apply. There is obviously no way the defendant could compensate or would compensate the victim for the damage or injury that she sustained. This is going to be with her for the rest of her life. She's a young woman, 18 years old, when this happens and she's going to carry this around with her for the rest of her life. Number seven obviously does not apply; that the defendant has no history of prior deliquency [sic] or criminal activity or has led a law abiding life for a substantial period of time before the commission of the instant crime.

*1281 The incidents in California and Atlanta, the prieur [sic] incident here, and the forcible rape here, all show that the defendant does have a prior history of criminal activity. Number eight obviously does not apply; the defendant's criminal conduct was a result of circumstances unlikely to reoccur. The Court obviously believes that it's the very same circumstances in each one of these prior incidents. The defendant, for whatever reason, gets rejected by a woman and takes it out in a violent manner against her or her family. The Court believes that it's something that's just in the nature and character of this defendant that causes him this type of conduct to repeatedly occur or reoccur. Number nine, the Court does not believe applies; that the character and attitudes of the defendant indicate he is unlikely to commit another crime. His previous record proves that. The defendant has been placed on probation previously because of the arson in Atlanta. Obviously, number ten would not apply; that he would respond to probationary treatment. He's already had that opportunity and it didn't. We still had the prieur [sic] incident and the forcible rape here after that. Number 11, that the imprisonment of the defendant would entail excessive hardship on himself or his dependants. The Court does not believe there's any evidence showing that and even if there were, the Court believes that the seriousness of this offense mandates that the Court in this matter impose the maximum possible sentence it can impose for the reasons just stated....
When, as in the instant case, the judge has complied with La.C.Cr.P. art. 894.1 by stating the individual considerations and factual bases for the sentence, appellate review of the sentence imposed is confined to consideration of whether the trial judge abused his great discretion. State v. Legendre, 522 So.2d 1249, 1252 (La.App. 4th Cir.), writ denied 523 So.2d 1321 (La.1988). Review of abuse of discretion is controlled by the following factors, examined in light of the criteria provided in article 894.1(A) and (B): (1) nature of the crime, (2) nature and background of offender and (3) sentences imposed for similar crimes by the same court and other courts. State v. Finley, 432 So.2d 243, 245 (La.1983).
Obviously, the trial judge in the instant case tailored the sentence to the particular crime and the particular defendant involved. As the trial judge pointed out, this defendant had two prior convictions each stemming from his apparent inability to take rejection from a woman. Therefore, we find no abuse of discretion on the basis of the first two factors outlined above.
The defendant argues strenuously in brief that the sentence is nonetheless excessive because sentences in other cases involving similar crimes have ranged from 10 years to 25 years. He says that courts in this state usually do not impose the maximum 40 year sentence for forcible rape, even when the circumstances of the crime are more egregious than in the instant case. Our review of the jurisprudence reveals, however, that the maximum penalty for forcible rape has been imposed in several cases. See State v. Rousell, 501 So.2d 834 (La.App. 4th Cir.1986), writ denied 504 So.2d 874 (La.1987); State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.), writ denied 435 So.2d 433 (La.1983). Therefore, based on all three factors listed above, we find that the trial judge in the instant case did not abuse his great discretion in imposing the maximum possible sentence for forcible rape.
Conclusion
For the above and foregoing reasons, we reverse our previous decision and affirm the trial court's conviction of the defendant. Additionally, we affirm the imposition of the 40-year maximum sentence for forcible rape.
AFFIRMED.