552 So.2d 617 (1989)
STATE of Louisiana, Appellee,
v.
Joel Thomas BAKER, Appellant.
Nos. 21050-KA, 21051-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
*618 Jones & Johnson by Jerry L. Jones, Monroe, for appellant.
William Guste, Atty. Gen., Baton Rouge, William Robert Coenan, Dist. Atty., E. Rudolph McIntyre, Jr., Asst. Dist. Atty., Winnsboro, for appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, Joel Thomas Baker, was indicted with four counts of aggravated rape of his stepdaughter, S.M., a violation of LSA-R.S. 14:42. In another indictment, he additionally was charged with four counts of aggravated oral sexual battery, LSA-R.S. 14:43.4, on the rape victim. That second indictment further charged defendant with three counts of sexual battery, LSA-R.S. 14:43.1, on his other stepdaughter, C.M. Defendant waived his right to trial by jury, and all charges were consolidated and heard by a judge.
At the close of a three day trial, defendant was found guilty of three counts of aggravated rape, three counts of aggravated oral sexual battery and one count of sexual battery. The fourth count of each of the charges involving the victim, S.M., was dismissed on a defense motion following the close of the state's case. A presentence investigation (PSI) was ordered by the court.
For the aggravated rape convictions, three mandatory sentences of life in prison without benefit of probation, parole or suspension of sentence were imposed and directed to run concurrently. Defendant was ordered to serve ten years at hard labor on each of the three offenses of aggravated oral sexual battery and a five year term for his sexual battery conviction. The court directed that the four lesser sentences run consecutively to one another and concurrently with the life sentences.
Defendant now appeals, reserving seven assignments of error. Only three are briefed and the others are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-12.4. For the reasons hereinafter expressed, we affirm all the convictions and sentences.

FACTS
In the summer of 1986, S.M. and C.M., sisters, ages 11 and 8 respectively, were living in Winnsboro with their mother and stepfather. During that time Mrs. Baker was experiencing medical difficulties associated with a pregnancy, and she was hospitalized from June 30 to July 5. Beginning July 1, the children were left in defendant's care, and on each of the nights of *619 July 1, 2 and 3, he both raped S.M. and made her administer oral sex.
Because of a malfunctioning air conditioner, the entire family was forced to sleep downstairs on the nights of the offenses. The children each had separate mattresses and defendant slept on the couch. S.M. stated that defendant, age 28, would awaken her by rubbing her through her clothing on either her breasts or her vagina. Armed with either a large pocket knife or small black pistol, he would then take her to his bedroom and order her to remove her clothing.
Once S.M. was undressed, defendant would direct her to lie on her back or assume a crawling position. After placing vaseline on either his genitals, her anus, or both, defendant would engage in anal intercourse with S.M. On each occasion defendant would also force her to perform oral sex, and this sometimes occurred both before and after the intercourse. While no vaginal intercourse ever occurred, defendant did place his fingers inside S.M.'s vagina. After each episode, he would apologize and also admonish S.M. not to tell anyone what had transpired. Fearing defendant, S.M. did not discuss these incidents with her mother for almost a year. The abuse was finally disclosed to a social worker.
On the night of July 1, defendant also awakened C.M. by rubbing her breasts and placing his hands inside her underclothes to feel her buttocks and vagina. He was unarmed. Although C.M. stated this occurred more than once during the July 1986 events, she could only be specific about the one occasion.
Defendant engaged in no improper behavior on July 4, the last night Mrs. Baker spent in the hospital. In advance, the girls discussed what had previously happened, and out of fear of defendant, they slept in a different room that night.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant complains that the trial court erred in allowing the introduction of evidence of other crimes which occurred outside the jurisdiction of the court. The record reveals two instances in which such testimony was elicited and an objection was interposed. Specifically, some three months prior to the instant offenses, on April 12, 1986, defendant sexually assaulted S.M. at the Lake Bruin State Park in Tensas Parish, where the family was celebrating her eleventh birthday. Everyone left the park in the evening except S.M. and defendant, who both decided to spend the night. S.M. was awakened by defendant and forced to engage in both anal and oral sex. Also, in June 1987, defendant sexually abused C.M. when the family was living in Oak Grove, and she testified as to the specifics of that incident.
Aside from offenses admissible as part of the res gestae or for impeachment purposes, evidence of other crimes committed by a defendant are admitted by statute only to show intent, knowledge, or system. LSA-R.S. 15:445, 446 (now repealed). However, a judicially recognized exception permits the introduction of evidence of prior sex crimes committed against the same prosecutrix. State v. Acliese, 403 So.2d 665 (La.1981); State v. Kelly, 456 So.2d 642 (La.App. 2d Cir.1984), writ denied, 461 So.2d 312 (La.1984).
In the case sub judice, the evidence complained of involved other sex crimes committed by defendant against the same girls. In addition, prior to trial the state served notice on defendant of its intention to offer evidence of such crimes committed by defendant upon the victims herein. Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant argues that the evidence presented did not establish guilt beyond a reasonable doubt. In analyzing such a claim, we must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact to conclude the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is not the function of this court on appeal to evaluate the credibility of witnesses *620 and overturn a trier of fact on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983). An appellate court will not second guess the credibility determinations of the trier of fact beyond a sufficiency evaluation under the Jackson standard of review. State v. Jackson, 452 So.2d 1225 (La.App. 2d Cir. 1984).
In announcing his verdict, the trial judge flatly stated: "Now, for the record, I believe what the little girls are telling me. I believe that their account is correct. I do not believe the defendant's testimony. And it boils simply down to that." A review of the victims' testimony, from which our previous account of the facts was taken, discloses that, if accepted, it sufficiently establishes the elements of the crimes of which defendant was convicted. See LSA-R.S. 14:41, 14:42, 14:43.1, 14:43.3, 14:43.4. Also, as noted by the judge, other evidence supports the girls' stories. For example, Dr. Bobby Stephenson, an expert in the field of psychology, had examined the victims and determined that one had been exposed to inappropriate sexual activity, while his interview of the other revealed nothing inconsistent with such abuse.
The defense presented testimony from defendant's family, including the victims' mother, and defendant himself, which was aimed at discrediting the victims' stories. Some defense evidence arguably indicated possible confusion about a small matter, the color of the pistol defendant allegedly used during the commission of some of the crimes. In addition, in an effort to explain Dr. Stephenson's statements concerning the girls' knowledge of sexual matters, testimony was presented that the girls' older brother had exposed himself to them and requested them to engage in improper conduct. Also, other testimony set forth that defendant lived away from home during the summer of 1986 and that the girls were in the care of others during part of their mother's hospitalization. While the victims noticed nothing unusual about defendant's appearance, testimony disclosed a gunshot wound scar on his upper thigh.
Obviously, the judge believed the victims' accounts of the events and did not accept, or regarded as insignificant, the alibis and protestations of innocence. After reviewing the record in accordance with the mandate of Jackson, we find that a rational trier of fact could certainly have concluded the state satisfied its burden of proof.

ASSIGNMENT OF ERROR NO. 3
Finally, defendant contends that his constitutional right against excessive and cruel punishment was offended. We disagree.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that cognizance was taken of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). Articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981).
Secondly, we must determine whether the sentence is grossly out of proportion to the seriousness of the offenses or nothing more than a purposeless and needless infliction of pain and suffering thereby violating LSA-Const. Art. 1, § 20 (1974). State v. Bonanno, 384 So.2d 355 (La.1980).
As stated, the sentence prescribed for aggravated rape is mandatory, a fact acknowledged by the judge during sentencing. His discussion of the pertinent sentencing considerations, then, was directed at the other offenses of which defendant was convicted.
Defendant had a lengthy record of criminal conduct in various parishes and another *621 state. In 1980, he was charged with criminal damage to property, but the PSI disclosed no disposition of the case. Several months later, also in 1980, defendant was charged with two offenses of middle grade theft. After he pled guilty, five years of supervised probation were ordered in lieu of a year in the parish jail. However, he constantly changed jobs and residences without obtaining his probation officer's permission. In March 1982, following convictions for issuing worthless checks, sentences of 20 days in the city jail were imposed as to each of the offenses. In addition, in the same month, defendant spent 15 days in jail for failure to appear, and also was charged with cruelty to a juvenile. While no disposition of that latter prosecution appears in the PSI report, the judge indicated defendant pled guilty to simple battery and was sentenced to six months. Apparently in response to the foregoing criminal activity, defendant's probation was revoked in 1984 as to one count of his middle grade theft convictions.
In 1987, defendant was convicted of unauthorized use of a movable having a value of $1,000 or less. A sentence of six months in the parish jail followed, but was suspended and two years of probation ordered. A conviction and two year sentence arose in Texas in May 1988 for theft; however, defendant was paroled to mandatory supervision by county authorities. Finally, at the time of the present sentencing, aggravated rape and aggravated oral sexual battery charges were pending in another parish.
Defendant exhibited quite poor performance as a student. His high school education was discontinued at two different schools because of scholastic difficulties. At a third, a private military institution, a diploma was obtained.
After graduation, defendant assisted his father on the family farm for about a year. From 1976 to 1980, defendant was in the U.S. Navy, and during that period experimented with various illegal drugs. In fact, while in service, he underwent a four month drug rehabilitation program. After a general discharge, he received training as an electrician in Dallas, Texas.
Defendant's drug abuse did not end with the attention he received while in service. In 1981, he went into another treatment program. Further, while serving the 1982 sentence for issuing worthless checks, he had to be hospitalized for withdrawal symptoms, the result of heroin use. After returning to jail, he attempted suicide. Six months after his release later in the year, more rehabilitative efforts were pursued at another treatment center.
Aside from defendant's work on the family farm and his training as an electrician, his employment history appeared sporadic. He apparently had worked offshore, and at the time of arrest for the instant offenses was employed by a towing company.
The preceding discussion amply supports the trial court's conclusions that defendant would commit another crime if released from incarceration, and that a need for correctional treatment in a custodial environment existed. Rather than being a needless infliction of pain and suffering, the sentences imposed are fully warranted and justified by the record.

CONCLUSION
For the foregoing reasons, defendant's arguments are rejected, and his convictions and sentences are affirmed.
AFFIRMED.