621 So.2d 17 (1993)
STATE of Louisiana, Appellee,
v.
Elmus TOLLIVER, Jr., Appellant.
No. 25002-KA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 1993.
*18 Burt & Hendrix by Joey W. Hendrix, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Homer T. Cox, III, Tommy J. Johnson, Asst. Dist. Attys., for appellee.
Before MARVIN, C.J., and NORRIS and VICTORY, JJ.
MARVIN, Chief Judge.
After being found guilty by a jury of carnal knowledge of the 16-year-old daughter of his live-in girlfriend, Elmus Tolliver appeals, complaining of two evidentiary rulings and of the six-year hard labor sentence imposed by the trial court. LRS 14:80.
We affirm.
Tolliver was charged when Shreveport police officers responded to a report of a domestic dispute at his home on January 27, 1992, between him and Sharon Rambo. Rambo, her daughter, T.R., who was the victim of the carnal knowledge, and two younger children, A.T. and M.T., who were born of the union of Tolliver and Rambo, lived in Tolliver's home. During the police investigation, T.R. related that Tolliver had been sexually abusing her for a long period of time and had "raped" her the night before the domestic dispute arose.

OTHER CRIMES EVIDENCE
Tolliver contends the trial court erred in allowing evidence of other crimes to be introduced at his trial.
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of *19 a person in order to show that he acted in conformity therewith. Purposes for which exceptions may be made include proof of motive, opportunity, intent, and plan. CE Art. 404 B(1). Safeguards of jurisprudential origin establish prerequisites for admissibility of such evidence to avoid undue prejudice to or surprise of the accused. State v. Prieur, 277 So.2d 126 (La.1973). See CE Art. 1103.
The State must notify the defendant in writing of its intent to offer other crimes evidence, stating the exception to the exclusionary rule upon which the State relies for admissibility of the evidence. Prieur also requires a pretrial hearing at which the State must: (1) show the evidence serves the actual purpose for which it is offered and (2) prove by clear and convincing evidence this defendant committed the other crimes. CE Art. 1103.
Generally, evidence of other sex crimes committed by the accused against the same victim or a similarly situated victim falls into one of the 404 B exceptions. For motive or lustful disposition toward the particular victim, see State v. Baker, 535 So.2d 861 (La.App.2d Cir.1988), and State v. Howard, 520 So.2d 1150 (La.App. 3d Cir.1987). For plan, system, and opportunity, see State v. Acliese, 403 So.2d 665 (La. 1981), and State v. Hanks, 593 So.2d 971 (La.App. 5th Cir.1992). For intent, see State v. Baker, 552 So.2d 617 (La.App.2d Cir.1989), writ denied, and State v. Moore, 534 So.2d 1275 (La.App. 4th Cir.1988), writ denied.
Particularly, where the testimony shows that the factual circumstances of the prior acts and the crime charged are virtually identical, the evidence of the other crimes is corroborative of the victim's testimony and establishes a system or plan. Baker, 535 So.2d 861, Hanks, and Acliese, cited supra.
Although CE Art. 404 B (eff. Jan. 1, 1989) contains a more lengthy list of purposes for which evidence of other crimes may be admissible than the listing in former LRS 15:445-446, Art. 404 B generally conforms to the rules applied by the Louisiana courts. State v. Kahey, 436 So.2d 475 (La.1983); CE Art. 404, Comment (k).
Acknowledging that the State gave the required notice before trial of its intent to use evidence of other acts of carnal knowledge between Tolliver and T.R., Tolliver contends the State did not meet its burden of proving the other crimes by clear and convincing evidence at the Prieur hearing. Tolliver claims T.R.'s testimony is contradictory. He complains she could not specify exact dates on which she had intercourse with him before the charged offense.
At the Prieur hearing, T.R. testified she had engaged in vaginal intercourse with Tolliver more than 30 times. Although she did not remember any specific date on which an act occurred, she said they began when she was "maybe around 11 or 12," and occurred no more than twice a week, "maybe" a Saturday or Sunday while her mother worked a night job. She said her half-sister and half-brother may have seen her and Tolliver engaging in intercourse.
T.R. explained that Tolliver would give her extra monetary allowance or threaten to hit her mother "or something like that" to induce her to engage in intercourse. She said that when she sometimes refused him, Tolliver would tell her to inform her mother if she wished, while adding that her mother would "not believe" her. She said Tolliver did carry out his threat to harm her mother when she refused to have intercourse with him.
T.R. said Tolliver's behavior began in their home when she was 11 years old, but she could not recall when the first act occurred, what time of day it was, what she was wearing, or who, if anyone, was present. She stated that she and Tolliver had engaged in intercourse two nights before the charged offense, but she could not remember what time it happened.
T.R.'s 11-year-old half-sister, M.T., testified that she had seen Tolliver and T.R. having sex on the couch about three years earlier at a time when Sharon Rambo was not at home.
*20 The trial court ruled the statements made by T.R. and M.T. would be admissible at trial, with the jury being instructed to give the statements whatever weight was appropriate. The court gave the appropriate limiting instructions to the jury during the trial and after closing arguments.
Where an assault victim testified at the Prieur hearing about that defendant's prior conduct with her, and her older sister testified that she was a victim of the defendant's similar conduct when she was the younger sister's age, the court found the evidence met the clear and convincing standard. Howard, supra.
Similarly, testimony of an 11-year-old victim and her 9-year-old sister about the behavior of a defendant toward each of them was found to meet the clear and convincing standard. Hanks, supra. Even one woman's testimony at a Prieur hearing of a factually similar attack by a defendant may meet the clear and convincing standard. See Moore, supra.
The pronouncement in the two Baker cases, cited supra, followed Moore. Each Baker defendant was charged with a sex crime against a particular victim. Each victim's testimony at the Prieur hearing was found to meet the clear and convincing standard for admitting other crimes evidence.
In Acliese, supra, the sole witness at the Prieur hearing was an 11-year-old victim who testified that defendant's acts followed a pattern. Waiting until the 11-year-old's mother was away from home or was asleep, Acliese would push the victim to the floor, remove her underwear, and assault her, threatening harm to the victim if she told anyone. The victim's testimony was found to meet the clear and convincing standard.
The key obviously is the trial court's assessment of credibility. Inconsistencies do not automatically render testimony incredulous. State v. Scott, 588 So.2d 1365 (La.App. 2d Cir.1991), writ denied. Here, the Prieur hearing testimony came from the victim and her sister about the behavioral pattern practiced by Tolliver toward T.R. Waiting until Sharon Rambo was gone, Tolliver would get T.R. alone, push her underwear to the side, assault her, while threatening to hurt her mother if T.R. told. This evidence, as in the cases mentioned, was believed by the trial court. Accordingly, we find the State met its burden of showing by clear and convincing evidence that Tolliver committed other crimes against T.R.
The other crimes evidence meets all prerequisites of Prieur and falls within the CE Art. 404 B exceptions. We find no error in this assignment.

CONTEMPORANEOUS OBJECTION
Tolliver complains that he should have been allowed to cross-examine T.R. about her past sexual behavior or to introduce evidence about her sexual history. Before Tolliver testified at trial, the court granted the State's motion, in limine, to prohibit Tolliver from introducing evidence about T.R.'s sexual history. CE Art. 412 A. Tolliver's counsel did not object to the court's ruling. We do not review this complaint. CCrP Art. 841; State v. Roberts, 541 So.2d 961 (La.App. 2d Cir.1989). See also State v. Simms, 381 So.2d 472 (La. 1980); State v. Richmond, 464 So.2d 430 (La.App. 1st Cir.1985), writ denied.

EXCESSIVE SENTENCE
Tolliver complains that the six-year hard labor sentence is unconstitutionally excessive and is an unwarranted deviation from the sentencing range suggested by the Felony Sentencing Guidelines.
Applicable to this defendant is grid cell 4-F which recommends 18-36 months of incarceration or 100-150 intermediate sanction units. No sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the judge to impose a sentence in conformity with the sentencing guidelines. FSG § 103J; CCrP Art. 894.1; LRS 15:328 B. State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992); State v. Perow, 607 So.2d 888 (La.App. 2d Cir.1992). See also House Concurrent Resolution No. 269, Regular Session, 1993.
*21 The guidelines are meant for typical cases, those without significant statutory aggravating or mitigating circumstances. FSG § 209A(1). Where aggravating or mitigating factors significantly differentiate a particular case from the typical case, the court should depart from the guidelines. FSG § 209A(3); State v. Strother, 606 So.2d 891 (La.App. 2d Cir.1992).
Aggravating and mitigating factors which the court may consider are contained in FSG § 209(B), (C). Once the case is determined to be non-typical, the trial court must exercise its reasoned discretion in determining the appropriate sentence. Strother, supra. For departure from the designated sentencing range, the guidelines require the sentence to be proportional to the seriousness of the offense and the offender's criminal history. FSG § 209A(4)(a). In such cases, the court has discretion to pronounce a sentence commensurate with the circumstances of the particular case without considering the proportionality of the sentence to the sentencing grid range. Lowery, supra. Of course, reasons for departure should be stated for the record. FSG § 209A(4)(b); Perow, supra.
Tolliver argues that the six-year sentence, being near the maximum ten years, should be reserved for others who are the worst carnal knowledge offenders. We cannot agree that six years is "near" the 10-year maximum.
Because he is a first felony offender whose sentence could have been suspended, Tolliver suggests that his contention that his sentence is constitutionally excessive is further "supported." A suspended sentence is not mandated, however, pre- or post-FSG, simply because a defendant is a first felony offender. Compare FSG; State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, and 1993 Concurrent Resolution, supra.
FSG grid cell 4-F is a discretionary sentencing zone. For typical cases in this zone, the court should consider whether the offender should be sentenced to incarceration, to an intermediate sanction, or to a combination of the two, depending on the circumstances of the particular case. FSG § 207C(2). Probation is an intermediate sanction. FSG § 207D(1)(b). A sentencing court continues to have discretion to suspend and pronounce a probated sentence unless the law provides otherwise.
Mitigating factors considered by the trial court were Tolliver's good work record, including his continuous financial support of his family, and Tolliver's lack of any significant criminal history, revealing only a minor brush with the law. This latter factor accounted for Tolliver's low criminal history index.
The aggravating factors considered by the trial court significantly differentiated Tolliver's case from the typical situation and justified departure from the guidelines. The trial court's reasons for departure from the guidelines may be categorized:
(1) Tolliver frequently engaged in sexual intercourse with his stepdaughter over a period of time, constituting multiple incidents for which separate sentences have not been imposed. FSG § 209B(11).
(2) Tolliver used his position of authority as a stepfather exercising custody, while the victim's mother was at work, to facilitate the commission of the offense. FSG § 209B(4).
(3) Tolliver threatened to harm T.R. or her mother if T.R. did not submit. FSG § 209B(6).

CONCLUSION
Considering the aggravating circumstances articulated by the trial court, we do not find the six-year sentence was constitutionally excessive or an unwarranted deviation from the sentencing range suggested by the FSG.

DECREE
Tolliver's conviction and sentence are AFFIRMED.